## CHARLES W. SPALDING

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 14, 1898—Rehearing denied April 7, 1898.*

1. CRIMINAL LAW—*the University of Illinois belongs to the class of corporations specified in section 80 of the Criminal Code.* The University of Illinois, while not a municipal corporation, is a public corporation, and its officers are within the provisions of section 80 of the Criminal Code, concerning the punishment of any "State, county, township, city, town, village or other officer" who embezzles or fraudulently converts public funds to his own use.

2. SAME—*indictment against treasurer of University of Illinois for embezzlement is properly framed on section 80.* An indictment against the treasurer of the University of Illinois for fraudulently converting the funds of the university to his own use is properly framed on section 80 of the Criminal Code, as such treasurer is a public officer charged with a public trust in receiving, holding and disbursing public funds and property.

3. SAME—*designating a public corporation as a "municipal corporation" is not substantial error.* Designating a corporation as a "municipal corporation" in an indictment against its treasurer for fraudulently converting its funds to his own use, and in the court's instructions to the jury, is not substantial error, where the corporation is a public corporation, and within the terms of the statute on which the indictment is framed.

4. SAME—*under section 80 if acts done are fraudulent they are done with criminal intent.* The word "embezzle" and the words "fraudulently convert to his own use," used in section 80 of the Criminal Code, mean the same thing, and in both a criminal intent is necessary, but if the acts relied upon as constituting the crime are fraudulently done they are done with criminal intent.

5. SAME—*when exclusion of evidence as to criminal intent is not prejudicial error.* Where the treasurer of a public corporation intentionally pledges its endowment bonds to secure a loan to himself, the exclusion of evidence, on his trial for embezzlement under section 80 of the Criminal Code, that owing to a deficit in the general funds, which he claimed the right to use for private purposes by reason of his agreement with the trustees to pay interest thereon, he had pledged the endowment bonds and used the money to pay warrants of the corporation regularly drawn upon him as treasurer, is not prejudicial error.

6. SAME—*evidence of specific intent to pay the debt when due is not material.* On the trial, for embezzlement, of the treasurer of a public

corporation who had knowingly and wrongfully pledged bonds of its endowment fund to secure a loan to himself, evidence of the defendant's specific intention to pay the debt when it came due is not material.

7. SAME—*when instruction as to the effect of proof of prior good reputation is erroneous.* An instruction on a trial for embezzlement, to the effect that the defendant's good reputation as proved might of itself raise a reasonable doubt of his guilt, is erroneous, where the proposition is not stated as an abstract rule of law, but as applying to the proof of good reputation in the case on trial, ignoring all other evidence.

8. The court holds that while the evidence in this case as to venue might have been more specific, it was sufficient to authorize the jury, in the absence of contrary proof, to find that the venue was proved.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

JOHN MILTON OLIVER, and JOEL M. LONGENECKER, for plaintiff in error:

Section 80 of the Criminal Code provides for the punishment of the officers of municipal corporations only, their servants and employees. All officers therein specifically enumerated, namely, "State, county, township, city, town and village" officers, are officers of municipal corporations. The language in said section, "or other officer," obviously means, other officer of a corporation of the same kind or character or species as those corporations which are distinctly enumerated. It means "other officer" of a corporation *ejusdem generis.*

The doctrine of *ejusdem generis* has frequently been applied by our Supreme Court. *In re Swigert,* 119 Ill. 89; *Brush* v. *Lemma,* 77 id. 496; *Misch* v. *Russell,* 136 id. 24.

Anderson's Dictionary of Law, in defining *ejusdem generis,* says: "In the construction of statutes, contracts and other instruments, where an enumeration of specific things is followed by a general word or phrase, the latter is held to refer to things of the same kind as those specified."

*Ejusdem generis* is specially applicable in the interpretation of statutes defining crimes and regulating their punishment. *McDade* v. *People*, 29 Mich. 50; Sutherland on Stat. Const. sec. 268; *Brooks* v. *Cook*, 44 Mich. 6.

A municipal corporation represents, in some respects and for some purposes, a particular local portion of the public. It is a local subdivision of the State. It exercises a certain governmental function within its territory. 1 Dillon on Mun. Corp. chap. 2, sec. 19.

The words "misapply" and "misappropriate" have a broader meaning than the word "embezzle" or the words "fraudulently convert to one's own use," because they not only include a conversion to one's own use, but a conversion to any use adverse to that of the owner. *United States* v. *Britton*, 107 U. S. 667; *United States* v. *Fish*, 24 Fed. Rep. 588.

"Misappropriate" covers any wrongful or fraudulent conversion by banker, broker, agent, clerk or servant. Stevens' Dig. Crim. Law, (1877,) 257; *State* v. *Foust*, 19 S. E. Rep. 275.

Felonious intent is an essential element in the crime of embezzlement, and is a question of fact to be decided in view of the circumstances. Prosecution for embezzlement cannot be sustained unless the respondent had an intent to convert the property to his own use, and the question of such intent is one for the jury. Rapalje on Larceny, 472; *Beatty* v. *State*, 82 Ind. 228; *People* v. *Galland*, 55 Mich. 628.

Felonious intent to convert to one's own use is a necessary element in embezzlement, and is a question of fact to be decided in view of the circumstances. *People* v. *Galland*, 55 Mich. 628.

Where the intention or good faith of a party to a suit becomes material, it may be shown directly as well as from the circumstances, and the party himself, if a competent witness, may testify directly to his intention or understanding, unless prevented by some other principle

of law applicable to the particular case.    11 Am. & Eng. Ency. of Law, 377, note 2.

A criminal intent is presumed or inferred from the commission of an act which is criminal *per se.* But when a specific intent is necessary to make an act an offense, the commission of an act does not raise a presumption that it was done with a specific intent.    11 Am. & Eng. Ency. of Law, 378.

Intent to convert funds or property to one's own use is a necessary element in embezzlement, and, therefore, before the offense can be made out it must distinctly appear that the respondent has acted with a felonious intent and made an intentionally wrong disposal, indicating a design to cheat and deceive the owner.    6 Am. & Eng. Ency. of Law, 502; *People* v. *Treadwell,* 69 Cal. 226; *People* v. *Gray,* 66 id. 271; *State* v. *Reilly,* 4 Mo. App. 392.

The intent and the act must concur to constitute crime, and the intent must therefore be proved, as well as the other material facts in the indictment.    2 Greenleaf on Crim. Law, 218; *Rex* v. *Wheatley,* 1 Lead. Cr. Cas. 57.

The criminal intent necessary to the commission of crime must be found at the time of the doing of the act, and cannot subsequently be imputed to a previous act. *United States* v. *Fox,* 5 Otto, 670.

Embezzlement is an offense that may be consummated in any manner capable of effecting it, but it must distinctly appear that the defendant acted with intent indicating a design to defraud.    Am. & Eng. Ency. of Law, 452-454.

The venue cannot be presumed—it must be proved. *Dougherty* v. *People,* 118 Ill. 160; *Moore* v. *People,* 150 id. 405.

In all criminal cases, whether the case is doubtful or not, evidence of good character is admissible on the part of the prisoner.    *Jupitz* v. *People,* 34 Ill. 516.

Not only is evidence of defendant's good reputation admissible in all criminal cases, whether the other evidence is apparently conclusive of guilt or not, but such

evidence may of itself raise a reasonable doubt of defendant's guilt. *Conkwright* v. *People*, 35 Ill. 207.

E. C. AKIN, Attorney General, CHARLES S. DENEEN, State's Attorney, and WILLARD M. McEWEN, Ass't State's Attorney, for the People:

Section 80 of the Criminal Code applies to officers of the State and also to officers of the municipalities enumerated, and others of the same class. The class enumerated includes all agencies of the State exercising any of its sovereign powers. The University of Illinois is a municipality of this class. Angell & Ames on Corp. (9th ed.) 7, 8; 1 Dillon on Mun. Corp. 19, 20; *Wilson* v. *Board of Trustees*, 133 Ill. 464; *Marsh* v. *Littleton*, 62 Iowa, 104; *Trustees* v. *Champaign County*, 76 Ill. 184; *Chicago* v. *People*, 80 id. 384.

The moment the defendant completed the transaction of pledging the bonds in question as a means for a loan to himself upon his note he embezzled such bonds, and cannot now be heard to say that he intended to use the proceeds of such bonds, or the credit obtained by means of such bonds and notes, for some laudable or other purpose. *Hemingway* v. *State*, 68 Miss. 371; *Brittain* v. *State*, 77 Ala. 202; *United States* v. *Taintor*, 11 Blatch. 374; *United States* v. *Adams*, 2 Dak. 305; *Armstrong* v. *People*, 38 Ill. 513; McLain's Crim. Law, sec. 120.

Proof of an act clearly unlawful proves conclusively an intent to injure, because when knowingly done it affords no opportunity for justification or legal excuse, and manifests so clearly a general guilty intent as to make it of no consequence what other particular intent co-existed therewith, and to preclude inquiry as to such other intent or into the motives which impelled to its commission. A generous motive is not inconsistent with a guilty intent, and proof of the one does not disprove the other. *United States* v. *Taintor*, 11 Blatchf. 374.

A public officer cannot escape responsibility for the unlawful use or expenditure of the public moneys entrusted to him, merely because he asserts, either in good or bad faith, that their expenditure was necessary or proper. Knowingly and willfully doing the act or omitting to perform the duty imposed by the law carries with it a conclusive inference of criminal intent, and no other evidence of such intent is necessary. *United States* v. *Adams*, 2 Dak. 305.

A criminal offense consists in the violation of the public law, in the commission of which there must be a union or joint operation of an act or intention or criminal negligence, and the intention is manifested by the circumstances connected with the perpetration of the offense and the sound mind and discretion of the person accused. *Slattery* v. *People*, 76 Ill. 217.

Mr. JUSTICE CARTER delivered the opinion of the court:

This writ of error was sued out to reverse a judgment of the Criminal Court of Cook county, convicting plaintiff in error, Spalding, of the crime of embezzlement under section 80 of the Criminal Code, which is as follows: "If any State, county, township, city, town, village or other officer elected or appointed under the constitution or laws of this State, or any clerk, agent, servant or employee of any such officer, embezzles or fraudulently converts to his own use, or fraudulently takes or secretes, with intent so to do, any money, bonds, mortgages, coupons, bank bills, notes, warrants, orders, funds or securities, books of record or of accounts, or other property belonging to or in the possession of the State or such county, township, city, town or village, or in possession of such officer by virtue of his office, he shall be imprisoned in the penitentiary not less than one nor more than fifteen years."

Spalding was the duly appointed treasurer of the University of Illinois, a public corporation of this State. As

such treasurer he had in his possession and control a large number of interest-bearing bonds belonging to the university, being a part of its endowment fund, and on September 14, 1896, he pledged to the First National Bank of Chicago, to secure his individual note for $25,000, payable on demand, thirty-two of such bonds issued by Macoupin county, Illinois, of the par value, in the aggregate, of $28,000, and exceeding that amount in actual value. By the terms of the pledge the bank was authorized to hold said bonds as collateral security for the payment of said note or any other liabilities of Spalding to the bank, and, on default of payment, to sell and assign the bonds and out of the proceeds to pay, etc. When the pledge was made the $25,000 so borrowed was, by the direction of Spalding, placed by the bank to the credit of the Globe Savings Bank, of which he was then president. At the time of the trial the note had not been paid, no demand for such payment had been made, and the pledgee still held the bonds. A successor to Spalding as treasurer had, however, been duly appointed by the trustees of the university, and Spalding had failed to deliver the bonds to him on proper demand made.

The university was founded by an act of the General Assembly approved February 28, 1867, (Laws of 1867, p. 123,) as the Illinois Industrial University, but by act approved June 19, 1885, its name was changed to University of Illinois. This university is maintained from interest derived from its permanent endowment fund arising from grants of land from the United States and by appropriations made by the General Assembly, is governed by trustees elected by the people, its property is exempt from taxation, and it is a public institution of the State. By the act of incorporation the board of trustees is required to appoint a treasurer of the university, who is made the custodian of the moneys, bonds and funds belonging to it. Section 18 of this act provides, among other things, that "it shall be deemed a criminal offense

for any person or persons holding in trust any part of the funds of said University of Illinois, knowingly or negligently to misapply or misappropriate the same, indictable in any court having jurisdiction, in the same manner as other crimes are punishable, by fine or imprisonment, at the discretion of the court, according to the nature of the offense." And by an act approved and in force April 17, 1877, it is provided that "the treasurer of said university and the said board are hereby required, in the future, to invest the principal of the funds arising from the endowment granted by the United States, in interest-bearing bonds of the United States or of this State, or in good county or school district bonds of this State. They are hereby prohibited from changing the securities in which said funds may be invested, except for re-investing in interest-bearing bonds of the class and character specified above in this section."

The indictment in both counts charges, in a more formal way, that Spalding was an officer, to-wit, treasurer of the University of Illinois; that the university was a *municipal* corporation of said State, duly incorporated, etc., and, being such officer, "fraudulently and feloniously did, without then and there having the consent of the said University of Illinois, a municipal corporation as aforesaid, embezzle and fraudulently convert to his own use a large amount of personal goods, money and property, to-wit, thirty-two bonds of Macoupin county, Illinois," describing them, and alleging that they were the property of said university, a municipal corporation as aforesaid, and that said property, as alleged in the first count, "then and there came into the possession," and in the second count, "was under the care" of said Spalding by virtue of his said office of treasurer, etc. The indictment then concluded by alleging, in language usual in indictments for larceny by embezzlement, that Spalding committed larceny.

The court below, at the instance of the People, in-
structed the jury "that the defendant, Charles W. Spald-
ing, as treasurer of the University of Illinois, was a
treasurer of a municipal corporation, and was subject to
the provisions of section 80 of the Criminal Code of Illi-
nois, which is as follows," stating it as above set out;
and the first point made by plaintiff in error is, that the
University of Illinois is not a municipal corporation, that
as such treasurer he was not subject to such section,
which, it is claimed, is confined to officers of municipal
corporations, and that the court erred in giving said in-
struction to the jury. Counsel concede, and there can be
no doubt, that said institution is a public corporation,
and it has been so held by this court. (*Thomas* v. *Illinois
Industrial University*, 71 Ill. 310.) See, also, *Head* v. *Uni-
versity*, 47 Mo. 220, where, in speaking of the University
of the State of Missouri, it was said: "By establishing
the university the State created an agency of its own,
through which it proposed to accomplish certain educa-
tional objects. In fine, it created a public corporation—
a State university." Counsel, however, while conceding
that it is a public corporation, deny that it is a municipal
corporation, or that it belongs to the same general class
enumerated in section 80 as "State, county, township,
city, town, village." These, too, are public corporations.
Thus, Mr. Justice Story, in his separate opinion in *Dart-
mouth College* v. *Woodward*, 4 Wheat. 669, after speaking of
the different kinds of corporations aggregate, said: "An-
other division of corporations is into public and private.
Public corporations are generally esteemed such as exist
for public political purposes only, such as towns, cities,
parishes and counties." (See, also, 2 Kent's Com. 275.)
Mr. Thompson, in his Commentaries on the Law of Cor-
porations, (vol. 1, sec. 22,) seems to include all corpora-
tions wholly public in their character as public municipal
corporations. In 1 Dillon on Municipal Corporations,
(sec. 20, 4th ed.) the author says: "We may, therefore,

define a municipal corporation, in its historical and strict sense, to be the incorporation, by the authority of the government, of the inhabitants of a particular place or district, and authorizing them, in their corporate capacity, to exercise subordinate specified powers of legislation and regulation with respect to their local and internal concerns. This power of local government is the distinctive purpose and the distinguishing feature of a municipal corporation proper. The phrase 'municipal corporation' is used with us, in general, in the strict and proper sense just mentioned, but sometimes it is used in a broader sense that includes also public or *quasi* corporations, the principal purpose of whose creation is as an instrumentality of the State, and not for the regulation of the local and special affairs of a compact community."

We are inclined to the opinion that, strictly speaking, the University of Illinois is not a municipal corporation, but it is a public corporation, and plaintiff in error, as its treasurer, was a public officer, charged with a public trust, under the laws of the State, in receiving, holding and disbursing public funds and property. The corporations mentioned in said section 80 and the University of Illinois are alike, then, in one respect, and are of the same kind or class, in this: that they are public corporations, and their officers are public officers in control of public moneys and property. What then do the words "or other officer," in the first line of section 80, mean? Counsel agree that in the interpretation of such statutes the doctrine of *ejusdem generis* must be applied,—that is, where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind. (Anderson's Dict. of Law; Sutherland on Stat. Const. sec. 268; *Brush* v. *Lemma*, 77 Ill. 496; *In re Swigert*, 119 id. 83; *Misch* v. *Russell*, 136 id. 22.) And we agree with the Attorney General in his argument that the section should be read as if written: "If any State, county, township,

172—4

city, town, village or other *like* officer, elected or appointed under the constitution or laws of this State, * * * embezzles," etc. In classifying corporations, distinctions are often made between those enumerated in this section, for, while all of them are public corporations, cities and villages are strictly municipal corporations, while counties and townships are often spoken of by the authorities as *quasi* municipal corporations. In line with what was said in *Misch* v. *Russell, supra,* the generic characteristic of all these corporations, including the university, and the one which makes them of the same kind or class, is that of their public character. We can see no reason for making any distinction, in providing for the punishment of offenses of this kind, between officers of municipal corporations strictly so called, and officers of other public corporations. The ground for their inclusion in this section of the statute would rather seem to be this: that officers of all such corporations receive, hold and disburse in their official capacity, as provided by public law, public moneys and property, and not because they exercise certain governmental functions over some specified local territory and its inhabitants. It clearly follows, then, that plaintiff in error was an officer of the same kind as those mentioned in section 80.

The question then arises, was the error, if error there was, a material one, and such as to require a reversal of the judgment? We think it was not. The material question is, was plaintiff in error an officer of the same kind as those mentioned in section 80, and not whether he was a municipal officer or not. But it is said, the indictment alleged that the University of Illinois is a municipal corporation, and the jury were told the same thing, and, that being an erroneous designation of the corporation, the judgment should be reversed. But the character of this corporation was a question of law for the court, and if it was of the same kind as those mentioned in section 80 it is wholly immaterial whether the

court called it a municipal or a public corporation. The allegation that it was a municipal corporation was a mere legal conclusion, and did not have to be proved. It was incorporated by a public statute, and the court would take notice of what kind of a corporation it was. At most, that part of the indictment, and of the instruction as well, was only an erroneous, but immaterial, legal conclusion, and could have had no effect on the verdict whatever. (1 Chitty on Crim. Law, 231; Moore on Crim. Law, sec. 787.) It was mere surplusage. It is not a question of variance, as where there is an unnecessarily particular description of property and the proof must correspond. If there was any error at all it was purely technical and immaterial, and could no more operate to reverse the judgment than if the offense had been embezzlement from the State of Illinois and the indictment and the instructions had charged the State was a monarchy.

A far more serious question is presented by the rulings of the trial court in refusing to allow plaintiff in error to answer, as a witness, a series of questions tending to elicit proof of his intent in pledging the bonds, and of what he intended to do, and did do, with the borrowed money. Plaintiff in error testified that he was elected treasurer of the university by the trustees in 1893 and re-elected in March, 1895, and that shortly after his election there came into his hands, as such treasurer, the funds of the university, viz.: First, the general fund, made up of appropriations for current expenses of the university, and of moneys received from the United States for the experiment station and for other purposes; second, the uninvested endowment fund, consisting, until re-invested, of proceeds of sales of lands and collections of matured bonds belonging to the university; third, the invested endowment fund. The bonds in question were purchased in 1895, and were a part of the invested endowment fund. Counsel for the defendant then offered to prove, upon questions propounded to the witness Spald-

ing, that he had an agreement with the trustees of the university to pay, and that he did pay, interest on this general fund and the uninvested endowment fund, quarterly, upon balances in his hands, the contention being in the court below that he thereby became a borrower and debtor of the corporation to the extent of the respective amounts of said two funds, and might therefore resort to the endowment fund instead of the general fund, upon which he was paying interest, to pay the warrants drawn for current expenses of the university. The court refused to allow this proof to be made. The court sustained objections also to the following questions, except as indicated below, put to the defendant by his counsel when testifying in his own behalf:

Q. "It has been testified to here, Mr. Spalding, on behalf of the State, that on the 14th day of September, 1896, you deposited the bonds in question with the First National Bank of Chicago and executed your judgment note for $25,000,—deposited the bonds as collateral,—and that the said $25,000 was by your direction passed to the credit of the Globe Savings Bank. Please state what disposition was made of the $25,000 you so borrowed."

Q. "Please state to the jury why you made this deposit of bonds and borrowed this money of the First National Bank."

Q. "The amount of this loan was $25,000?—A. Yes, sir.

Q. "Now, the difference between the face of this loan and the amount of bonds,—that is, the face of the bonds and the accrued interest,—what did that amount to?— A. $3000.

Q. "Aside from the accrued interest on the bonds?— A. $3000, aside from the accrued interest on the bonds."

Q. "State whether or not, directly after securing this loan at the First National Bank, you did or did not pay, in proper and legal warrants drawn on you as treasurer, the difference between $25,000 and the aggregate value of the bonds, including interest."

Q. "You may state to the jury, Mr. Spalding, what your intention was in borrowing this money of the First National Bank."

Q. "What did you intend to do with the money when you got it?"

Q. "What did you do with it?"

Q. "Will you please state what your intention was with respect to re-paying this loan and recovering said bonds in your possession as treasurer of the University of Illinois at the time you made the deposit of them with the First National Bank?"

Q. "State whether or not you intended to, and did, use any part of this $25,000 for yourself, for any other person or corporation except the University of Illinois."

Q. "Look at the documents I now show you, and state what they are.—A. They are warrants of the University of Illinois drawn upon me, as treasurer."

Q. "State whether or not these are not warrants that you paid with the $25,000 in question."

The witness stated that the warrants were made payable at the Globe Savings Bank. He was also asked if the $25,000 was not credited on the books of the latter back to him as such treasurer, but the objection that the books were the best evidence was sustained. The witness then identified certain checks drawn by him, as treasurer of the university, on the Globe Savings Bank, but was not permitted to answer that the checks were drawn in payment of the warrants. These warrants and checks, paid, as it was claimed, subsequently to the borrowing of the $25,000, and amounting to more than the value of the pledged bonds, were offered in evidence by the defendant below but excluded by the court. Pursuing the same line of defense, counsel for the defendant asked the court to give to the jury, among others, the following instructions:

19. "If the jury believe, from the evidence in this case, that the defendant, Spalding, made a loan from the First

National Bank of $25,000, and delivered as security therefor, under the terms of the collateral note dated September 14, 1896, the bonds described in the indictment, for the purpose and with the intention of using said $25,000 in paying legal and proper warrants upon him as treasurer of the University of Illinois; and if the jury further believe, from the evidence, that at the time Spalding made said loan and so delivered said bonds to said bank, he, Spalding, intended to apply to the proper and legal uses of the University of Illinois not only all said sum of $25,000, but also out of his own money, or out of moneys in his possession upon which he was paying interest to said university, an additional sum of money, which said additional sum of money was not less than a sum equal to the difference between the sum of $25,000 and the entire principal of all said bonds, together with the premium and accrued interest thereon; and if the jury further believe, from the evidence, that in pursuance of said purpose and intention the defendant, Spalding, after so making said loan and so delivering said bonds, used, in paying proper and legal warrants drawn upon him as such treasurer, said sum of $25,000, and out of his own money, or out of moneys in his possession upon which he was paying interest to said university, an additional sum of money, which said additional sum of money was not less than a sum equal to the difference between the sum of $25,000 and the entire principal of said bonds, together with the premium and accrued interest thereon, then the court instructs the jury, as a matter of law, that the defendant, Spalding, did not embezzle or fraudulently convert to his own use any of the bonds described in the indictment, and the jury should find the defendant not guilty."

32. "The court instructs the jury that although they may believe, from the evidence, that the defendant pledged the bonds (mentioned in the indictment) as collateral security on a loan, yet unless they believe, from

the evidence, that at the time he so pledged the same he did so with a criminal intent, they should find the defendant not guilty."

38. "The court instructs the jury that if the evidence in this case fails to show that the defendant, Spalding, converted to his own use the bonds described in the indictment, and that he did so fraudulently, they will find the defendant not guilty.".

It is provided in division 2 of the Criminal Code as follows:

"Sec. 8. A criminal offense consists in a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence.

"Sec. 9. Intention is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused."

The court gave to the jury, at the request of the defendant, an instruction in the language of said section 8, and gave also, on behalf of the People, the following:

1. "The court instructs the jury that intent in this case may be inferred from the fact (if you find, from the evidence, beyond a reasonable doubt, that it is a fact,) that the defendant, while treasurer of the University of Illinois, pledged the bonds in question in this case, held by him, as such treasurer, as part endowment fund of the university, to secure his note to the First National Bank of Chicago; and the jury, in considering the subject of intent, should consider it with reference to the pledging of the bonds in question, (if the jury so find that he did so pledge the said bonds,) as distinguished from his motive or purposes as to the use of any fruits of such pledge."

Mr. Bishop, in his new Criminal Law, (vol. 2, secs. 372, 373, 379,) in pointing out the distinction between the statutory crime, embezzlement, and the common law crime, larceny, says: "The gist of common law larceny is the felonious 'taking' of what is another's, with the simul-

taneous intent in the taker of misappropriating it; but in the statutory embezzlement there is no felonious taking, for the thing comes to the servant by delivery, either from the master or a third person, so that the question now is, by what act, after it is received, does the servant commit the embezzlement? The rule of law appears only indistinctly in the books. Still, we may infer from the authorities, and from the reasons inherent in the question, that if the servant intentionally does with the property under his control what one must intend to do with property taken to commit larceny of it, he embezzles it, while nothing less is sufficient; or, assuming the needful criminal intent to exist, he must and need only do what in our civil jurisprudence is termed 'conversion,' defined to be any dealing with the thing which, impliedly or by its terms, excludes the owner's dominion. To illustrate: if the servant, instead of delivering the property to his master or another, as required by his duty, pledges it for his own debt, or runs away with it, or neglects or refuses to account for it, or otherwise wrongfully diverts its course towards its destination to make it his own, he embezzles it. The felonious or otherwise fraudulent intent is an essential element, yet if a man commits the act of embezzlement the presumption is that he means to embezzle."

In the said section 80 the word "embezzle" and the words "fraudulently convert to his own use" mean the same thing. In both a criminal intent is necessary, but if the acts constituting the embezzlement are fraudulently done they are done with a criminal intent. In the absence of any statutory definition of embezzlement, except as a fraudulent conversion to his own use, by one of the class of persons described, of the property entrusted to his care, it cannot be said that a fraudulent or criminal intent is not an essential element of the offense. Indeed, section 9 above quoted, and said section 80, as well as others making similar offenses felonies, clearly provide

otherwise. It would be a startling proposition to lay down as the law of this State, under our Criminal Code as it stands, that one might be convicted of embezzlement, or any other felony, in the absence of a felonious or criminal intent. Thus, no one would contend that one entrusted with valuable securities belonging to another would be guilty of embezzlement, who, honestly mistaking such securities for others belonging to himself, should pledge them as security for his own debt. Yet it is, of course, true, as stated by Mr. Bishop, that "if a man commits the act of embezzlement the presumption is that he means to embezzle," for every man is presumed to know the law, and to intend that the natural and probable consequences of his acts shall follow. It does not follow, however, that he may not show in his defense such facts and circumstances as would tend to rebut the presumption that he intended to embezzle, and we are of the opinion that it would have been the better and safer practice had the learned judge of the trial court allowed the accused to answer as a witness the series of questions above mentioned so far as they tended to elicit proof of his intent, except those to which specific objections were properly sustained, and left the People to make such proper proof on the same subject, on cross-examination and in rebuttal, as they might have thought advisable. But unless there was prejudicial error in this particular case the judgment should not be reversed.

By the offers of proof made by counsel for the accused preceding and in connection with the questions propounded, and the testimony of Spalding which was admitted, it was made clear that the defense did not deny, nor seek to deny, that Spalding knowingly and intentionally pledged the bonds to secure the payment of his individual debt while they were in his possession and care as such treasurer, but, on the contrary, that the defense was, and that it was sought to establish such defense by answers to said questions to which objections

were sustained, that there was no criminal intent or no fraudulent conversion of the bonds to his own use, because, as treasurer of the university, he paid out the $25,000 so borrowed and an additional sum equal to the excess in value of the bonds over the $25,000, for the payment of expenses of the university on its warrants regularly drawn upon him for that purpose, and that he had at the time an agreement with the trustees that he was to pay interest on the general fund, out of which such expenses were payable, which had come into his hands as treasurer, and that by such agreement and payment of interest he became the debtor of the university to the amount of such general fund and might lawfully use the same for his own purposes, and that, there being then a deficit in · the treasury of the university, the supplying of this deficit to pay such expenses by the $25,000 so borrowed by pledging the bonds was a conversion of the bonds, not to his own use, but to the use of the university, and that such facts, had the court admitted the proof, would have shown or tended to show that he had no intent to embezzle or to fraudulently convert the bonds to his own use. Thus confining the questions to their well understood object and purpose, we think no prejudicial error was committed in refusing to permit them to be answered. The warrants were drawn on him for expenses, and plaintiff in error was charged with the knowledge that they were not drawn upon or payable out of the invested endowment fund; that that fund could not lawfully be applied to their payment, and that the act incorporating the university made it a criminal offense knowingly or negligently to misapply or misappropriate this endowment fund. If a deficit had been created in the expense fund by his use of it under the supposition that by the alleged agreement to pay interest he could use it for himself, by supplying this deficit he did nothing more than he was bound to do, and the application of the $25,000 thereto was the application to his own use, and

not to the use of the university. Nor would a contrary belief on his part have changed the law. The trustees themselves had no power to divert these several funds from the purposes for which they were set apart by law. But it is not intended to be said that the mere unlawful conversion of one fund to another for the supposed benefit of the university would have been embezzlement under the statute in question.

Nor would it have been material, on the question whether it was embezzlement or not, to prove that when Spalding pledged the bonds for his own debt he had the specific intent to pay the debt when it should become due and reclaim the bonds for the owner, any more than it would have been had he sold them, intending to re-purchase and eventually to return them to the owner. Whether or not all such facts should be admitted on the question of the degree of guilt, where the extent of the punishment is to be determined by the jury upon the facts as well as the law, it is not necessary to determine, as neither the court nor the jury could, under the law as it now is, fix the term of imprisonment in such cases. We are inclined to the view taken by the Supreme Judicial Court of Massachusetts in a similar case,—*Commonwealth* v. *Tenney,* 97 Mass. 50. It was there said: "With reference to the fraudulent and felonious character of the acts proved, and their sufficiency to warrant a conviction, we entertain no doubt. To take from their place of deposit the bonds of a depositor and send them out of the State to be used as collateral security for the defendant's own debt was a fraudulent conversion. Intention to restore the bonds, and the agreement of the party who received them not to sell or dispose of them, cannot do away with the criminal nature of the transaction. A guilty intent is necessarily inferred from the voluntary commission of such an act, the inevitable effect of which is to deprive the true owner of property and appropriate it to the defendant's own use. Perhaps in a majority of cases

the party who violates his trust in such a manner does not expect or intend that ultimate loss shall fall upon the person whose property he takes and misuses. But no hope or expectation of replacing the funds abstracted can be admitted as an excuse before the law." See, also, *Commonwealth* v. *Butterick*, 100 Mass. 1.

What has been said practically disposes also of the question raised upon the refusal of the court to give certain instructions to the jury as asked by the accused. What was otherwise material in them was in substance embodied in those given.

The next error alleged is, that there was not sufficient proof that the offense was committed in Cook county. Of course, no conviction could be legally had without proof of venue. The court instructed the jury that if the evidence failed to show that Spalding delivered the bonds, or caused them to be delivered, to the pledgee in Cook county they should find him not guilty. Their attention was thus called to the importance and meagerness of the proof on this question, and in the absence of any opposing proof we are inclined to think the evidence was sufficient. It was proved that Spalding had his private office and his office as treasurer of the university at the Monadnock building, in Chicago, in Cook county, Illinois, where the Globe Savings Bank, of which he was president, also had its location, and that he transacted his business there as treasurer and otherwise, and kept the bonds which he held as treasurer there, in the vaults of said bank; that the bonds were delivered to the First National Bank of Chicago by Spalding on September 14, 1896, and had been continuously in its possession from that time to the trial, and that demand had been made upon Spalding in said city of Chicago by his successor, as treasurer, for said bonds, and that Spalding failed to deliver them to him. The proof should have been more specific, but we think the jury were authorized to find that the venue was proved.

It is next contended that the court erred in refusing the following instruction asked by the accused:

"In considering the evidence of the defendant's good reputation, the jury are instructed that such good reputation may, of itself, raise a reasonable doubt of the defendant's guilt in the minds of the jury. The evidence of such good reputation is to be regarded as a substantive fact, like any other facts tending to prove the defendant's innocence, and ought to be so regarded by the jury. The evidence of good reputation is positive evidence, and may itself produce an acquittal. Hence, if the jury shall believe, from the evidence, that the defendant has always, prior to the time of his arrest on the charge stated in the indictment, borne a good reputation for honesty, it is the duty of the jury to consider such evidence of his good reputation as tending to create a reasonable doubt of his guilt, and if such reasonable doubt appears then he should be acquitted."

The defendant had proved his previous good character, and the jury had been instructed, at the request of the People, that proof of such good character was permissible and should be considered by them, but the above refused instruction was the only one asked by the accused on that subject. This instruction was incorrect in itself, and especially so when considered in connection with the evidence in the case, for the reason that it would have told the jury, in substance, that the defendant's good reputation as proved might, of itself, raise a reasonable doubt in their minds of his guilt. The instruction stated this not as an abstract proposition, but as applying to the proof of good reputation in the case on trial, ignoring all other evidence in the case. Without modification it was erroneous.

Believing the record to be without harmful error, the judgment must be affirmed.          *Judgment affirmed.*