## DAVISON v. ALASKA BANKING CO.

### (Second Division.  Nome.  July 14, 1917.)

### No. 2717.

1. BAILMENT ⬥5—CONVERSION.

   The plaintiff mailed a package of money to the bank for general deposit in his name.  Some time later he came to the bank, and upon inquiry found the money had been received, but was informed that it had not been opened, nor the money placed to his credit.  Plaintiff demanded the money be credited to him, or the package and money be delivered to him, both of which demands were refused.  The plaintiff thereupon brought suit for the money.  The defendant answered the complaint, and alleged that another was the true owner.  *Held*, on receipt of the money by the defendant, and its refusal to deposit it as requested in the name of the depositor, the relation of bailor and bailee was created between the plaintiff and defendant.

2. BAILMENT ⬥26, 27—EVIDENCE—PLEADINGS.

   Subsequent to the receipt of a package of money from plaintiff with instructions to deposit it to his credit, which was not done, plaintiff demanded the return of the money, which was refused.  A right of action immediately accrued to the plaintiff.  On suit the bank answered that the money belonged to anoth-

---

⬥See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

er. *Held,* the defense and evidence are inadmissible in the action.

**3. BAILMENT ⟨⟩16—CONVERSION—PERSONAL PROPERTY.**

Conversion is any dealing with the thing which impliedly or by its terms excludes the owner's dominion, and it may be stated that a bailee, holding his title from his bailor and owing his first duty to his bailor, must not do that which excludes the idea of ownership in the bailor.

**4. BAILMENT ⟨⟩16—CONVERSION—ACTS OF.**

The bank committed two acts of conversion in this case: First, when the defendant bank first received the property, the evidence shows that it received it for general deposit, and failing to place it to the credit of the plaintiff was an act of conversion; second, the cashier of the bank gave prior instruction to the bank clerk not to open or deposit the money to plaintiff's credit when received. It was received with instructions to deposit to plaintiff's credit, without notification to the plaintiff that his order would not be obeyed. These acts constituted an act of conversion.

In this case the plaintiff (bailor) sues the defendant (bailee) for conversion relative to a package of money sent to defendant for deposit. Some time in December, 1916, or January, 1917, the exact date is immaterial, the plaintiff mailed a package of money, at Taylor, Alaska, addressed to the defendant, the Alaska Banking & Safe Deposit Company, at Nome, Alaska, which package of money according to prevailing evidence was intended for general deposit. Subsequently and prior to February 16, 1917, plaintiff came to Nome and on or about February 9 went to defendant's bank to inquire as to the arrival of the package of money. He was advised of its arrival, and also, being advised that the package had not been opened, nor the money placed to his credit, he thereupon requested and demanded of the authorized officer of the bank to open the package and to place the money therein to his credit, or to deliver the package to him; but the defendant refused to respond to this demand. Upon these facts plaintiff bases this action for conversion, claiming damages in the sum of $715.15, the amount of money and checks contained in the package. The defendant bank sets up the defense that this money belongs to the estate of Conrad Freeding, deceased, and that his administrator is the true owner of the money, which ownership is the result of an action instituted in the commissioner's

⟨⟩See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

court on February 16, 1917, by said administrator, and it is contended that this is a complete defense to plaintiff's action, the property having been delivered to the administrator in accordance with the proceedings and judgment in the commissioner's court.

H. O'Neill, of Nome, for plaintiff.

O. D. Cochran, of Nome, and Ira D. Orton, of Seattle, Wash., for defendant.

TUCKER, District Judge.    Immediately on the receipt of the money by said defendant and its failure to place it to the credit of plaintiff, but holding it intact, the relation of bailor and bailee was created between plaintiff and said defendant. Upon demand for the package by the plaintiff and refusal by said defendant, this cause of action arose, several days prior to the institution of the action by Freeding's administrator heretofore referred to for the recovery of the package of money.    It seems to me, according to the plain rules of pleading, that, inasmuch as the cause of action accrued in this case prior to the action of Freeding's administrator to recover the package of money, the defense and evidence of the true ownership are inadmissible in this action.

Much reliance is placed on the Idaho case in support of the contention that said defendant should be allowed to show the true ownership as a complete defense to this action; but that case does not square with the case at bar either upon the pleadings or the facts, and is not applicable to this case.    Mr. Jones, in his work on Evidence (volume 1, § 287), states the law correctly, citing the Idaho case.    He says:

"But while the bailee cannot avail himself of the title of a third person, though that third person be the true owner, for the purpose of keeping the property for himself, yet he may show as a defense against the bailor that he has actually delivered the property to the true owner, who had the right to possession upon a demand by the latter, even before legal proceedings have been commenced."

See Idaho case, 93 U. S. 575, 23 L. Ed. 978; 3 R. C. L. pp. 84 to 92, inclusive; Kohn v. Richmond & Danville R. R. Co., 37 S. C. 1, 16 S. E. 376, 24 L. R. A. 100, 34 Am. St. Rep. 726.

The plain distinction between the Idaho case and the case at bar is that demand for and refusal of redelivery of the property passed between the bailor and bailee, respectively, in

this case prior to demand by the alleged true owner. In the Idaho case, when the libelants demanded and instituted the action for the recovery of the cotton, the latter had already been delivered to the true owner. This is shown by the facts of the case and by the opening sentence of the opinion, where the court said:

"In determining the merits of the defense set up in this case, it is necessary to inquire whether the law permits a common carrier to show, as an excuse for nondelivery pursuant to his bill of lading, that he has delivered the goods upon demand to the true owner."

The fundamental and essential distinction between the Idaho case and the case at bar is that in the Idaho case the true owner made demand for delivery prior to demand of libelants, who stand in the position of the plaintiff in this case. The positions of the parties to the two actions and the proceedings are reversed.

There is another phase of this case, which has been more difficult to dispose of than the question already adverted to and determined. This is an action for conversion, based upon the demand of the plaintiff and the refusal of defendant to redeliver when demanded, and the question now to be determined is whether or not the averment of the conversion is supported by the evidence in the case. There are numerous definitions of conversion, but the shortest and probably the best is this: Conversion is any dealing with the thing which impliedly or by its terms excludes the owner's dominion, and it may be stated that a bailee holding his title from his bailor and owing his first duty to his bailor must not do that which excludes the idea of ownership in the bailor. See State v. Rigall, 169 Mo. 659, 70 S. W. 150; Spalding v. People, 172 Ill. 40, 56, 49 N. E. 993; 38 Cyc. 2005. At page 2028 of 38 Cyc., it is said that:

"A mere detention of another's chattels which rightfully came into one's possession is not an actionable conversion. If, however, the detention be based upon a negation of the owner's rights, or be accompanied by an intent to convert the property to the holder's own use, a right of action will arise."

The gist of this action is the refusal by said defendant bailee to deliver on demand to the plaintiff bailor; but, while the law is that a demand and refusal are generally prima facie evidence of a conversion, a qualified, reasonable, and justifi-

able refusal is not evidence of a conversion. See note to Bolling v. Kirby, 24 Am. St. Rep. 806 et seq. In 5 Cyc. p. 203, the law is laid down as follows where there is an adverse claim:

"Where the bailee cannot or does not compel an interpleader, he may refuse delivery to the bailor, and, assuming the burden of establishing a paramount title to that of the bailor, surrender the property to the claimant, if the real owner. So if unwilling to undertake the onus of proving a paramount title in the claimant, the bailee may retain possession for the bailor and await an action by the claimant in which he must stand or fall by the bailor's title; or he may refuse to deliver the property to either party until he can in good faith investigate the facts as to the real ownership, and may, for a brief period, retain possession for that purpose."

While it may be conceded that this is a correct statement of the law, it must be noted that it is qualified by the last sentence as follows:

"He [the bailee] must not, however, absolutely refuse to deliver the property without any qualification attached to his refusal, such refusal being equivalent to an actual conversion."

In Jaggard on Torts, vol. 2, pp. 728, 729, it is said:

"But, while an unqualified refusal to abide by the conditions of special property is conclusive evidence of conversion, if there be a qualification annexed to it, the question then is as to the reasonableness of such qualification. The substance of the refusal is the denial of title. The jury, under proper instructions from the court, passes on the reasonableness of the qualification. Noncompliance on demand may be sufficient refusal."

See notes to citation from Jaggard.

Having regard, therefore, for the letter and spirit of the law as laid down by the courts and text-writers, I am clearly of the opinion that the defendant, assuming the relation of bailee with respect to the package of money, committed two distinct acts of conversion: (1) When the defendant bank first received the property, the evidence shows that it received it for general deposit, and failing to place it to the credit of the plaintiff was an act of conversion. It may be said that the defendant was advised at that time of a third party claimant. In that case it should not have received it, or it should have at the first opportunity so advised the plaintiff or depositor. The defendant did receive it, however, but offered no satisfactory explanation to the bailor of why it was not placed to his credit

It actually appears from the evidence of Mr. McCloy that he had instructions from Mr. Sheldon, cashier, prior to receipt of the package not to open it, and yet, quoad the plaintiff, Davison, the defendant took the package for general deposit. This and the subsequent conduct of said defendant was an exercise of dominion over this property which the law forbids to a bailee and constitutes conversion. (2) The plaintiff's evidence is to the effect that prior to February 16, 1917, he went to said defendant's bank on several occasions and demanded that the money in the package be delivered to him, or what is effectually the same thing that it be placed to plaintiff's credit (pages 19, 20, and 21). McCloy, assistant cashier, told plaintiff Mr. Sheldon the cashier told him (McCloy) not to open the package, and Mr. Sheldon told plaintiff "that he wouldn't do anything until they found out what they were going to do," and upon the plaintiff's further inquiry as to who "they" were Mr. Sheldon replied "an attorney," meaning Mr. Cochran. Subsequently the plaintiff went with his attorney to the bank and Mr. Sheldon refused to deliver this money point blank. (See, also, page 29 of evidence.). This evidence is undisputed and in fact corroborated by said defendant's evidence. In my opinion, the reply of Mr. Sheldon was in law an unqualified refusal to answer the demand of the plaintiff, bailor, or that the qualification annexed to it that the bank would do nothing until it saw an attorney, Mr. Cochran, was unreasonable, and that said refusal constituted conversion. While it appears from the plaintiff's evidence in chief, however, that the conversation between McCloy and Sheldon and the plaintiff occurred on the same date, it appears from the other evidence that Mr. Sheldon was not in Nome at that time, so that the first demand of the plaintiff was refused by defendant, through McCloy, with only the statement that Mr. Sheldon had told him (McCloy) not to open the package, and there can be no doubt of the absoluteness of that refusal; that it was unqualified and unreasonable.

I have said, supra, that said defendant should not have received this money with knowledge of a third claimant, etc., and that it was guilty of conversion for failing to place it to plaintiff's credit immediately as intended by plaintiff, said defendant failing to do so only because the absent cashier had left instructions for it to be kept intact. As particularly pertinent thereto it is said in 3 R. C. L. p. 91, par. 20, that:

"Even though a bailee of property is entitled, under some circumstances to surrender possession thereof upon demand of a holder of the paramount title, it is clear that, in order to entitle him to make such surrender a defense to the claim of his bailor, he must not connive with the holder of the paramount title, and his contract of bailment must have been entered into by him without knowledge of such title, for if the bailee has knowledge of the hostile claim, and with such knowledge he accepts the property, he cannot thereafter assert such title as an excuse for his failure to deliver the bailed property to his bailor upon demand; * * * nor on the same principle can a bailee hunt up a paramount claimant, and then, when called upon by the bailor for the property answer that he is a bailee of such claimant. Similarly, where a bailee instigates the commencement of an action by an adverse claimant, in consequence of which the bailed property is seized the loss of the property thus occasioned is no bar to the claim of the bailor for the redelivery thereof."

See notes.

And in Schouler's Bailments and Carriers, § 118, it is said:

"So strictly is the bailee bound to honor the bailor's title, and become a bailment party on no other footing, that if he accepts the bailment with full knowledge of an adverse claim he cannot set up that claim afterwards as against the bailor."

In Transport Co. v. Barber, 56 N. Y. 544, 552, it was said that:

"The right of a bailee to set up title in a third person, as against the claim of his bailor, has been much considered. It is said that neither a wharfinger nor a warehouseman can deny the right of the person from or for for whom he receives the property," and this "rule applies in all cases where the bailee seeks to avail himself of the title of a third person for the purpose of keeping the property himself from the bailor."

For the foregoing reasons, I am of the opinion that the plaintiff is entitled to have judgment in this cause, and a decree may be entered in accordance with this opinion.