GEORGE A. WEIMER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 19, 1900.*

1. CRIMINAL LAW—*when town supervisor cannot be convicted of embezzling town money.* A town supervisor cannot legally be convicted of embezzling town *money,* under section 80 of the Criminal Code, if the evidence shows that what he received and receipted for as money was in fact town orders.

2. SAME—*when Statute of Limitations begins to run against embezzlement by town officer.* Under section 80 of the Criminal Code, providing for the punishment of public officers who embezzle or convert to their own use public money received by them, the Statute of Limitations begins to run when the offense is committed, and not when discovered or made manifest by failure to pay on demand.

MAGRUDER, J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

BOWLES & BOWLES, for plaintiff in error.

E. C. AKIN, Attorney General, (CHARLES S. DENEEN, and H. O. SPROGLE, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error, George A. Weimer, was on the 27th day of February, 1900, in the criminal court of Cook county, indicted for embezzling and fraudulently converting to his own use, on the first day of April, 1897, money and property of the town of Lemont, in Cook county, of the alleged value of $10,000, while he was

supervisor of said town. Weimer was first elected supervisor in April, 1893, and by re-election was continued in office until the election, at the township election in April, 1897, and the qualification, of his successor.

The indictment, consisting of four counts, was found under section 80 of the Criminal Code, (Rev. Stat. p. 363,) which reads: "If any State, county, township, city, town, village or other officer elected or appointed under the constitution or laws of this State, or any clerk, agent, servant or employee of any such officer, embezzles or fraudulently converts to his own use, or fraudulently takes or secretes with intent so to do, any money, bonds, mortgages, coupons, bank bills, notes, warrants, orders, funds or securities, books of record, or of accounts, or other property belonging to, or in the possession of the State or such county, township, city, town or village, or in possession of such officer by virtue of his office, he shall be imprisoned in the penitentiary not less than one nor more than fifteen years." The first two counts did not, as did the other two, allege that the property so embezzled and fraudulently converted was in Weimer's possession by virtue of his office, but all contained the concluding averment, that in the manner and by the means stated said Weimer "is deemed to have committed larceny, and did then and there, etc., feloniously steal, take and carry away, contrary to the statute," etc. There was no motion to quash, but on a trial the jury found Weimer guilty of larceny in manner and form as charged in the indictment, that the property so stolen was of the value of $1594, and fixed his punishment at imprisonment in the penitentiary. Motions for a new trial and in arrest of judgment were made and overruled, and Weimer was sentenced to imprisonment in the penitentiary under the act of 1895, as amended in 1897, providing for a system of parole. (Hurd's Stat. 1897, p. 626.)

It appeared from the evidence that after the election and qualification of Weimer's successor the town board

appointed a committee of three persons to examine the books and accounts of Weimer, and that this committee found, upon examination, and so reported in writing to the board, that his books and accounts, in connection with the books and receipts of the county and township treasurers, showed that Weimer had received from all sources, as supervisor, over and above the amount he had accounted for, the sum of $11,429.64,—the amount stated in the bill of particulars,—but that he claimed to be entitled to a further credit of upwards of $3000. John B. Wagner, Weimer's successor, testified that he delivered a copy of this report to Weimer, and soon thereafter, on April 20, 1897, made a written demand on him for said sum of $11,429.64 due the town, and that, as nearly as he could remember, Weimer said, "All right, I will try and settle up in a few days." Weimer, as a witness, denied that he made any such statement, but he did not pay over any money or comply in any way with such demand. The evidence shows that Weimer kept no record or books whatever for the last two years of his official service, except a private pocket memorandum of a part of his receipts and disbursements. A gross disregard and violation of his official duty was clearly proved against Weimer, if not a much more serious offense, but if he was not properly convicted of the crime charged in the indictment the judgment cannot stand.

Before the trial the State's attorney, in compliance with the order of the court, on motion of Weimer's counsel, filed the following bill of particulars:

"On the trial of this cause the People will claim and prove that defendant, George A. Weimer, received during his term of office as supervisor of the town of Lemont the sum of $11,429.64, money and property of said town, which said sum the said defendant, Weimer, converted to his own use.

"Dated March 27, 1900.          CHARLES S. DENEEN, *State's Att'y.*"

Various errors are assigned and urged upon our attention. In the first place, it is insisted that under the bill

of particulars it was error for the court to admit evidence
to the jury tending to prove the receipt and conversion
by Weimer of different items at different times, and of
different amounts, while he was supervisor, and that the
People should have been allowed to prove only that he
received and converted the sum of $11,429 in money at
one time.   We do not so understand the law.   If the bill
of particulars was not sufficiently specific, counsel should
have asked for a more specific one.   The only limitation
upon the allegations of the indictment made by the bill
of particulars was in relation to the kind of property
embezzled or converted.  By the bill of particulars it was
limited to money, the property of the town of Lemont.
It was shown by a receipt given by Weimer, as super-
visor, to the town collector on account of the town tax,
$5110.58, and testimony was given tending to prove, that
but $300 or upwards of this amount was in money, and
that the rest, exceeding $4000, was in town orders,—that
is, that tax-payers holding orders against the town, which
had been issued by the town authorities, had paid their
town taxes with such orders, and that the collector turned
them over to the supervisor, for the town.   In this way,
it was claimed, the orders were redeemed or paid, and
the supervisor could not be guilty of the charge against
him of having embezzled or stolen the amount such or-
ders represented.   Weimer also undertook, on the trial,
to prove that he had paid out the balance of the moneys
charged against him, which he had received as super-
visor, in satisfying judgments which had been rendered
against the town.   The defendant asked the court to in-
struct the jury that a receipt was not conclusive evidence
that the amount receipted for was money, and that if
they believed, from the evidence, that Weimer's receipt
or receipts to the town collector did not represent money
received by Weimer, he could not in this case be required
to account for them as money.  No instruction was given
applicable to this part of the case, and we are of the

opinion that the one requested, though somewhat imperfectly drawn, should have been given. If it was true that Weimer receipted for and received from the town collector, as money, the amount mentioned, in town orders, it could not be charged up to him in this case, and he could not be legally convicted of embezzling or converting to his own use their face value as money. There was no evidence that he embezzled the town orders, and if there had been, he could not have been convicted of it under the charge of embezzling money. *Goodhue* v. *People*, 94 Ill. 37.

The next error alleged which we shall consider is, that the evidence tending to prove guilt also tended to prove that the embezzlement and conversion took place more than three years before the finding of the indictment, and that the offense was barred by the statute. There was no positive or direct evidence of any misapplication or conversion by Weimer, to his own use, of the moneys of the town, but it appeared that he failed to charge himself with moneys which he received at different times, and to the same extent that such proof tended to prove a fraudulent conversion it tended to prove that it occurred more than three years prior to the finding of the indictment. The case, so far as affected by this question, seems to have been tried below on the theory that the indictment was for refusing or failing to pay over the moneys of the town to Weimer's successor on demand, which is made a criminal offense by section 215 of the Criminal Code. Had the indictment been under this section, proof that the embezzlement or fraudulent conversion occurred during a previous official term would have shown no defense, as it was Weimer's duty to account to himself as his own successor, and proof that he did not do so would not have shielded him from conviction for the offense of failing or refusing to pay over, on demand, to his successor in office. (*Johnson* v. *People*, 123 Ill. 624.) But the indictment in this case is under section 80, and

the charge is that the accused embezzled and fraudulently converted the moneys of the town to his own use. In such a case the statute would, of course, begin to run when the offense was committed, and not at some later time when he failed or refused to pay over to his successor on demand made. Such failure or refusal was not the crime charged in this indictment, but was only evidence tending to prove such crime, and, as before said, there was evidence tending to prove that if Weimer did embezzle or convert to his own use the moneys of the town, he did so long before the expiration of his last term, and before February 27, 1897, which date was just three years before the indictment was found. Under this state of facts the court gave to the jury, upon the request of the People, this instruction:

9. "The court instructs the jury that in this case the Statute of Limitations against the prosecution of the crime of embezzlement or larceny is three years, and you are further instructed that the Statute of Limitations began to run in this case when the defendant should have lawfully paid or turned over any moneys in his hands, if there were any, to his lawful successor."

This instruction was misleading and erroneous, for, as before shown, the statute began to run against any embezzlement or fraudulent conversion when it was committed, and not when it was discovered or made manifest by a failure to pay over on demand. For any embezzlement in 1893, 1894, 1895 or 1896 Weimer could have been indicted without waiting for a demand by his successor.

Other questions are raised which it does not appear necessary to decide, the most important of which is, that the crime and punishment therefor, defined by section 80, are essentially different from the crime and punishment of larceny, and that section 74, making it larceny for any one to embezzle money or property delivered to him, does not embrace embezzlement by a public officer of moneys or property received by him by virtue of his office;

and our attention is called to *Stoker* v. *People*, 114 Ill. 320, where it was held that a constable who failed to pay over moneys collected by him on an execution was not guilty of larceny under section 74, but was liable under section 79, only. Whether it could be properly said in the case at bar, as it was in the *Stoker case*, that the money or property was not *delivered* to the accused in the sense in which that term is used in section 74 it is not really necessary here to determine, and in the absence of any brief or argument on that question on behalf of the People we shall not consider it. It may be said, however, that the mere fact that a longer term of imprisonment is provided for the offense defined in section 80 than the statute prescribes for larceny in general,—and that, too, without regard to the distinction, as to the value of the property, between grand and petty larceny,—would not prevent the offense from being larceny under the statute, if it clearly appeared from other provisions of the statute that it was the legislative intent to make it larceny. Thus, in *Hoge* v. *People*, 117 Ill. 35, it was held that under section 224 of the Criminal Code, providing that whoever steals a horse shall be imprisoned in the penitentiary not less than three nor more than twenty years, it was not necessary to prove the value of the property; that as to the larceny of a horse the distinction between grand and petty larceny was abolished. So, also, in *McDaniels* v. *People*, 118 Ill. 301, where there was a conviction on an indictment for the larceny of a railroad ticket under section 77 of the Criminal Code, which limits the term of imprisonment in the penitentiary to one year, it was held that the value of the ticket was immaterial. The charge and conviction in both of these cases were for larceny, and the judgments were sustained. But for the errors hereinbefore pointed out the judgment is reversed and the cause remanded.          *Reversed and remanded.*

Mr. JUSTICE MAGRUDER, dissenting.