(No. 23256.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK S. HEILEMANN, Plaintiff in Error.

*Opinion filed December 19, 1935—Rehearing denied Feb. 6, 1936.*

Nash, Ahern, McDermott, McNally & Kiley, and Edwards & Block, (Michael J. Ahern, and Sidney H. Block, of counsel,) for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, and Richard H. Devine, of counsel,) for the People.

Mr. Justice Wilson delivered the opinion of the court:

The plaintiff in error, Frank S. Heilemann, together with John L. Robinson, was indicted in the criminal court of Cook county for embezzlement. Robinson was granted a severance and thereafter the indictment as to him was dismissed. Heilemann (hereinafter called the defendant) waived a jury, was tried by the court, found guilty and

sentenced to the penitentiary. He sued out this writ of error.

The indictment consisted of five counts. Three were dismissed and the trial proceeded upon the second and third counts, which charged that the defendant was in the employ of the Pacific States Life Insurance Company as vice-president, assistant secretary and manager of the eastern division, and that he fraudulently and feloniously, and without the consent of the Pacific States Life Insurance Company, embezzled and fraudulently converted to his own use the sum of $16,525, the personal goods, funds, money and property of the company named.

The indictment was under section 75 of the Criminal Code, general act of 1874, which provides: "If any officer, agent, clerk, or servant of any incorporated company; or if a clerk, agent, servant or apprentice of any person or co-partnership, or society, embezzles or fraudulently converts to his own use, or takes and secretes with intent so to do, without the consent of his company, employer or master, any property of such company, employer, master, or another, which has come to his possession, or is under his care by virtue of such office or employment, he shall be deemed guilty of larceny." Ill. State Bar Stat. 1935, p. 1173; Smith's Stat. 1935, pp. 1145, 1146.

In 1929 the defendant was president of the Great American Casualty Company. In that year the Pacific States Life Insurance Company (which because of frequent references to the name will hereafter be designated the Pacific States Company) re-insured the business of the Great American Casualty Company and the defendant became associated with the Pacific States Company. He was vice-president, assistant secretary, manager of the eastern division and agent of the company, and Robinson was assistant secretary and agent of the same company until 1933. Robinson was also an attorney. In 1932 the Pacific States Company, under a contract of re-insurance, assumed the

business of the Chicago National Life Insurance Company. To effect this re-insurance the Pacific States Company entered into an agreement with the American Conservation Company whereby the latter agreed to re-write the policies of persons theretofore insured in the Chicago National Life Insurance Company. The policy holders were not bound to accept the insurance of the Pacific States Company, but if they paid the premiums they automatically consented to the contract. The General Life Insurance Company and the Illinois Mutual Life Insurance Company, hereinafter mentioned, were agencies of the Pacific States Company at the time of certain transactions hereinafter mentioned in which their names will appear. The services for re-insurance were performed in the years 1932 and 1933, and at the conclusion thereof there remained due from the Pacific States Company to the American Conservation Company the sum of $22,102.31. Because the former company was unable to pay the amount in full at the time it was due and the American Conservation Company needed money, a settlement for $5000 was finally effected. At the request of the defendant the account was assigned to Robinson, and an assignment was prepared and delivered to him. The defendant, on behalf of the Pacific States Company, signed three checks, one dated March 7, 1934, for $2000, and two dated March 15, 1934, for $1000 and $2000, respectively, each payable to Robinson. Each check was endorsed by Robinson to the order of the American Conservation Company. On the back of each check was typewritten, "Chg. American Conservation account." The payment of the $5000 closed the account so far as the American Conservation Company was concerned. Robinson did not have $5000 owing to him by the Pacific States Company and had no interest in that fund. He received twelve other checks from the defendant, who asked him to obtain the cash on them, which he did and gave the amount thereof ($12,201.36) to the defendant, and the amounts were

charged to the account of the American Conservation Company, but this amount was not for any real service he had performed. Robinson was a People's witness, and testified that in February, 1934, when he and the defendant and G. R. Collins, attorney for the Pacific States Company, were present, Collins asked the defendant whether he had authority from the president of the Pacific States Company to make the "Shimp deal," (the deal for the settlement of the American Conservation Company account,) and the defendant answered in the negative.

A check dated February 4, 1934, for $498.95, was used by the defendant for the purpose of paying the difference between the value of an automobile traded by him for a new automobile. This amount was first charged to what was called the "suspense account," but later the defendant told the cashier of the Pacific States Company that he would give his check in return for it, but the amount was not re-paid, and subsequently, at the direction of the defendant, the amount was charged to the American Conservation Company account. The remainder of the amount alleged in the indictment to have been embezzled by the defendant was taken by him from the returned amount of guaranty funds, first, from one required by the Insurance Department of the State when the Illinois Mutual Life Insurance Company sought to operate under the laws of the State, and, when the company failed to qualify, the guaranty fund was returned to the Pacific States Company; second, a guaranty fund was likewise required to stabilize the General Life Insurance Company, and a portion of that fund was returned to the Pacific States Company. The defendant took a portion of the two funds and the amounts were charged to the account of the American Conservation Company.

The defendant does not deny the execution of the checks mentioned nor the application of the proceeds thereof to his own use, but testified that when he became associated

with the Pacific States Company its president desired him to continue with the company for at least three years, and he agreed to do so, for which he was to receive a bonus of three per cent of the premium income of the Great American Casualty Company, using the statement of 1928 as a figure or basis of calculation; that the premium income on which the bonus was predicated was in excess of $700,000, and that three per cent of the actual amount was approximately $21,900, and that prior to January 1, 1933, he had not received any of the bonus. He testified that he requested the president of the Pacific States Company several times to pay the extra compensation, but that the latter said that "on account of the tightness of money at the home office" he could not pay the amount from the funds received at that office but that it would have to be "worked out" in some manner at the Chicago office; that the president of the company mentioned the fact that the president of the American Conservation Company had been urging the payment of the amount due for its work of re-insurance, and suggested to the defendant that it might be an opportunity for him to make an agreement with the president of the American Conservation Company for a settlement in such a way and for such an amount as that he could obtain a part of the compensation due him on the bonus. The president of the Pacific States Company gave him certain directions as to the manner in which to consummate such an agreement, suggesting that he take an assignment instead of a release, to keep the defendant's name from appearing on the records of the Pacific States Company. In pursuance of this suggestion an assignment was made to Robinson instead of the defendant. The settlement of the American Conservation Company account for $5000 was to be made through Robinson as assignee. Other credits were to be made to the American Conservation Company account in the same manner, but not in excess of $17,000 in addition to the $5000, which was the original amount

of the claim of the American Conservation Company. The respective amounts were to pass through the hands of Robinson as assignee and turned over to the defendant to apply on his bonus until it had been paid in full. It is the contention of the defendant that under this arrangement the Pacific States Company, through its president, Vernon, not only knew of the arrangement with reference to the Shimp deal but consented thereto. The statute recognizes the fact that the lack of consent of the employer is necessary before a charge of embezzlement can be sustained. The reason stated to the defendant for this proposed action was, that there would not be criticism of the department for showing money paid to the defendant when the records of the Pacific States Company were being examined by the Insurance Department of Colorado, California or Illinois, and further, that there were many old employees of the company who were probably disgruntled and when the reports came in they might cause trouble.

The defendant testified that he was in Denver on March 15 or 16, 1934, and at that time talked to the president of the Pacific States Company. The defendant stated to him that he had received about $6500 of the amount of his original bonus and that it looked as if it might be some time before he would receive the remainder of his money, and that as there was considerable furniture in the Chicago office, worth about $15,000, valuable to a going concern, he would be willing to accept that as the balance due him if the board of directors was willing it should be done. The president of the company was agreeable to that settlement and spoke to members of the board of directors who were still present at the office following a regular meeting, about the indebtedness due the defendant, and told them that the defendant was willing to cancel the indebtedness in exchange for the furniture in the Chicago office, and also told them of the deal with the president of the American Conservation Company; that there was a vote taken by the

board of directors and it voted unanimously in favor of the defendant's taking the furniture for the cancellation of the indebtedness. The defendant testified that he sent to Denver for a copy of the minutes. A certified copy was produced and offered, but upon objection that the minutes were not properly certified because they were signed by an assistant secretary and no seal was attached nor a showing made that the company had no seal, these minutes were excluded by the court. The defendant testified that subsequently the president of the Pacific States Company told him that the directors had re-considered the matter of permitting him to have the furniture and to "forget about the bill of sale" which had been sent him and to continue with the deal with the president of the American Conservation Company, and in pursuance of this statement and his former understanding he received the amounts shown under the circumstances appearing in the record. The defendant testified that no demand had ever been made upon him by the Pacific States Company nor by his bondsman to return money alleged to have been wrongfully converted by him.

G. R. Collins, who had been the attorney for the Pacific States Company since 1928, testified that at no conversation in February, 1934, when there were present, himself, Robinson and the defendant, did he ask the defendant whether he had authority from the president of the Pacific States Company to make the deal with the president of the American Conservation Company and that the defendant answered in the negative. The witness testified that the president of the Pacific States Company told him, in the presence of the defendant, when they were in Denver, that he, Vernon, the president, had just concluded a matter with the board of directors for the defendant's benefit whereby he would receive the office equipment and furniture in the Chicago office in liquidation of the indebtedness which the company had owed him for a long time, and he knew a bill of sale was subsequently prepared to give title to such

office equipment. When the defendant's attorney sought to elicit from the witness what conversation he had with the president of the company with respect to the American Conservation Company account when the defendant was present with him in Denver in February, 1934, an objection was interposed and sustained. The bill of sale was offered in evidence. Five witnesses testified to the good reputation of the defendant.

In rebuttal, Lester Keelin, an examiner of the State Insurance Department, testified that he made a request of the defendant that the latter submit to him for examination the books of the Pacific States Company and the defendant said a court order was necessary. One was obtained and the examination made. A charge of $3500, dated February 20, 1934, and one dated March 2, 1934, for $1000, appeared on the books of the company, but the checks could not be found. They were afterward produced by Miss Christensen, secretary to the defendant. The vouchers for the two checks were not produced. Different check numbers appeared in the records for certain checks other than those the checks actually bear.

The assignments of error which are argued are: (1) That the prosecution failed to prove that the acts of the defendant were without the consent of his employer, and there was a failure to prove felonious intent; (2) that the court erred in overruling the defendant's motion to require an election as to which of the checks or transactions shown in evidence the prosecution would rely upon for a conviction; (3) that the trial court improperly excluded competent testimony; and (4) that there was a material variance between the proof and the allegations of the indictment.

The gravamen of the offense of embezzlement, as defined in the section of the statute under which the defendant was tried, consists in the subsequent conversion of the property of an incorporated company whose original pos-

session by the accused was lawful, with the felonious intent on the part of the officer, agent or employee so accused to convert the same to his own use. *People* v. *Stevens,* 358 Ill. 391; *People* v. *Parker,* 355 id. 258.

The good faith of the American Conservation Company in settling its claim of $22,000 for $5000 is not questioned. The assignment of the claim to Robinson was an indirect method of effecting the settlement, and it was unusual that the account was permitted to appear as a continuing obligation of the Pacific States Company, and that all of the amount above $5000 was applied on the claimed bonus of the defendant. However, the reasons given for this circuity of method in paying the bonus are not inherently improbable. It is admitted that there was no written agreement for the allowance of the bonus to the defendant, but the testimony on his behalf is that the president of the Pacific States Company acknowledged the validity of the claim, so advised the board of directors and that it acquiesced in the proposed payment, and that the president requested the payment to be made in some such manner as that devised. There is no direct evidence that the bonus was not due the defendant, and there is considerable evidence, written and verbal, that it was due him. The only direct evidence that the consent of the defendant's employer to the payment of the bonus in the manner specified was wanting is the testimony of Robinson, who had been indicted with the defendant. He testified that he heard the defendant tell the attorney for the Pacific States Company that the president of that company had not given his consent to the defendant to obtain his money through the assignment to Robinson. The attorney for the insurance company, who is not shown to be interested more than that he admitted that he was a friend of the defendant, denied that any such conversation occurred or that there was such an admission made. There is no showing that the board of directors of the insurance company had not au-

thorized the action to be taken by the company for the payment of the bonus indebtedness. The purported action of the board of directors of the Pacific States Company to which the defendant testified, and which he sought to support by the certified copy of the minutes which was excluded, related to the cancellation of the indebtedness of the company to the defendant on account of the bonus he claimed. A bill of sale was given to evidence the defendant's title to the furniture and office equipment heretofore mentioned. This was substantial evidence that the bonus had been recognized as a valid claim, though eventually the transfer of the furniture and office equipment was not made.

The circumstantial evidence was in conflict. In view of the evidence above set forth, the circumstances shown on behalf of the prosecution to establish the fact that the company had not authorized the payment of the bonus in the manner testified was unsatisfactory. It cannot merely be assumed that the president or directors of the insurance company conspired with the defendant to permit him to convert the company's funds, but proof thereof by the prosecution was required, either by direct evidence or by circumstances sufficiently strong to establish the fact. Though the defendant offered evidence of the company's indebtedness to him and that he was authorized to obtain payment from the amount saved in the settlement with the American Conservation Company, it was not necessary that he show valid authority. It was merely evidence on his part to show that his intent was not felonious. The burden was upon the prosecution to show that the defendant did not have the company's consent to the action he took and that the taking of the fund was with felonious intent. *People* v. *Stevens, supra; People* v. *Parker, supra.*

It is contended that the court erred in overruling the defendant's motion to require the People to elect as to which check or transaction shown in the evidence they would rely upon for a conviction. The indictment charged

in one count the taking of money, goods and property, and then specifies a certain amount of money which is the sum total of several transactions. Another count charges the taking of the property and funds of the corporation, without specifying money. The checks were not set forth in the indictment. It was the theory of the prosecution that the amounts taken by the defendant, whether by the use of checks or otherwise, were all a part of one scheme and that the conversion of the entire amount was one offense. Upon that state of facts there was no right of the defendant to require an election by the prosecution and confine the proof to the conversion of one check or any one amount less than the whole amount claimed to have been embezzled. *People* v. *Perrello,* 350 Ill. 231; *People* v. *Bernstein,* 250 id. 63; *Schintz* v. *People,* 178 id. 320.

The testimony which was excluded which it was contended by the defendant's counsel was competent was that offered by Collins, the attorney for the Pacific States Company, as to a conversation he had with the president of that company, in the presence of the defendant, with respect to the account of the American Conservation Company, frequently called the "Shimp account" because Shimp was the president of the latter company. The grounds of the objections to the several questions upon the same subject were not stated at the time the objections were sustained. It is contended that the evidence offered was as to facts which would have tended to negative a fraudulent or felonious intent on the part of the defendant. The evidence would have been cumulative as to the existence and recognition of the American Conservation Company account and the bonus indebtedness of the defendant and the recognition by the insurance company of the claim of the defendant to the fund in question. Great latitude is allowed in proving intent where intent is an essential element of the crime charged, but the defendant also should be permitted to show in his defense such facts and circumstances as tend

to rebut the presumption that he intended to commit the crime with which he is charged. (*People* v. *Ervin*, 342 Ill. 421; *Spalding* v. *People*, 172 id. 40; *Wohlford* v. *People*, 148 id. 296; Underhill's Crim. Evidence, (3d ed.) sec. 446; 20 Corpus Juris. 485.) The testimony of Collins should have been admitted.

It is contended that the minutes of the board of directors of the Pacific States Company were improperly excluded. The certification of the minutes was not strictly in accordance with section 15 of the Evidence act. (51 S. H. A. 15.) Because of the necessity for another trial, it is unnecessary to further consider this contention. On another trial properly certified minutes may be submitted in evidence.

The circumstances do not satisfactorily support the testimony of Robinson, who had been indicted on the same charge with the defendant, that the latter did not have authority from the company to take the funds in question in payment of his bonus. The testimony of Robinson was subject to suspicion and it was necessary that it be satisfactorily corroborated. (*People* v. *Semenick*, 360 Ill. 250; *People* v. *Vehon*, 340 id. 511.) The defendant had been president of an insurance company and bore a good reputation. Because of that fact and the conflicting evidence, coupled with the refusal of the trial court to permit the introduction of competent corroborating testimony, it is the duty of this court to reverse the judgment and remand the cause. *People* v. *Gold*, 361 Ill. 23; *People* v. *McPheron*, 354 id. 381; *People* v. *White*, 347 id. 576; *People* v. *Dameron*, 346 id. 408.

The judgment of the criminal court is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*