(No. 23351.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN S. SCHNEPP, Plaintiff in Error.

*Opinion filed February 19, 1936.*

496

W. St. John Wines, and William Creighton Wines, for plaintiff in error.

Otto Kerner, Attorney General, A. H. Greening, State's Attorney, A. B. Dennis, and Thomas W. Hoopes, for the People.

Mr. Justice Farthing delivered the opinion of the court:

John S. Schnepp has prosecuted a writ of error from this court to review his conviction in the circuit court of Sangamon county upon a charge of embezzlement.

The indictment contains three counts. The first count charges that Schnepp was the conservator of Mary M. Ettinger and that he embezzled a check, belonging to his ward, dated December 9, 1931, for $20,258 on the Ridgely Farmers State Bank of Springfield, drawn by the Illinois Power Company and payable to him as such conservator. The second count charges the embezzlement of $20,258 of the money of his ward. The third count charges the embezzlement of the proceeds of the check.

On December 9, 1931, by virtue of an order of the probate court, defendant sold to the Illinois Power Company 200 shares of its capital stock, belonging to his ward, and received in payment therefor the check in controversy. On the same day he deposited it in the First National Bank of Springfield to his personal account. At that time he had an overdraft of $1138.71 which was absorbed, and, at intervals, he checked against the account so that by December 17, all of the balance was exhausted except $822.74. On the next day the probate judge entered an order requiring him to file a report in the estate of his ward by January 28, 1932. He filed a report showing the receipt of the money from the sale of the stock and also a balance due of $31,827.16. A part of the balance was shown to consist of a mortgage for $1000 and twelve notes of $1000 each.

Benjamin S. DeBoice, probate judge, testified he told defendant on the day the report was filed, that he wanted to see him the next morning; that when defendant came to his office the witness asked him if the balance shown as cash on hand was in the bank and defendant replied that it was not; that he then asked him where it was and defendant said, "I used it"; that the witness asked how long it would take to get the money back into the estate and defendant said, "I will have it for you by Monday." The witness then told him he wanted the money back in the estate and that he was going to have him invest it in government bonds, to which the defendant replied, "Very well,"

and left the office. The next time Judge DeBoice saw defendant was in February, 1935, when he was brought into the circuit court room after his arrest. On cross-examination the witness was asked if, when he. told defendant he wanted the money invested in government bonds, defendant offered some other investment. An objection to the question was interposed. Outside of the presence of the jury the witness testified that between January 18 and 28, defendant informally presented to him a petition which was never filed or acted upon, for leave to invest $30,000 of his ward's funds in a real-estate mortgage to be executed by a man named Shaffer on two pieces of business property in Springfield; that from his examination of the title in an abstract office, he found Schnepp owned one of the properties and Shaffer had title to the other one, subject to redemption. He did not examine the decree of foreclosure and did not know that $20,000 in Shaffer notes were not merged in the mortgage; that his investigation showed the value of the property was only $45,000 and he would not have approved the loan. The court ruled that the testimony amounted to proof of an offer of restitution and excluded the evidence. The ruling was correct.

Soon after this occurrence defendant. disappeared and several witnesses testified to his absence from the State for a sufficient period to toll the Statute of Limitations. Three of them testified to conversations with defendant in which he stated he went from New York City in September, 1934, to Los Angeles, California, where he remained until his arrest in February, 1935; that on his way he stopped in Illinois to attend the World's Fair; that he had suffered loss of memory; that his journeys were in an effort to learn his identity and that he had obtained a job selling newspapers on a prominent corner in Los Angeles in the hope. of encountering someone who would recognize him. Defendant's evidence consisted of the testimony of several witnesses as to his good reputation.

It is urged that the bank was apprised, by the face of the check, that the fund which it represented belonged to the estate of Mary M. Ettinger, and that defendant held it in trust for his ward; that no disbursement by the bank, or entry upon its books, could diminish the fund or affect her rights; that the integrity of the fund is unimpaired; that so far as she is concerned it is still in the bank, and, therefore, no embezzlement has occurred. The essence of the crime of embezzlement consists in the conversion to his own use of funds of another in the defendant's possession by reason of a fiduciary relation between him and the owner. The crime is complete when there is a fraudulent conversion by the accused without the owner's consent. (*People v. Mooney,* 303 Ill. 469.) The uncontradicted testimony shows such a conversion by defendant. Whether or not the bank had notice that the money belonged to defendant's ward, and whether or not she may recover the fund, cannot relieve him from the consequences of his wrongful act. *People* v. *Dean,* 321 Ill. 128.

It is next contended that the facts in this case do not warrant an indictment or conviction under section 74 of the Criminal Code, because of the provisions of section 81½ of the same code, which provide a penalty for the failure or refusal of a conservator to account for and pay over any property of his ward. Section 74 provides that whoever embezzles or fraudulently converts to his own use money, goods or property delivered to him which may be the subject of larceny shall be deemed guilty of larceny. To sustain his contention, defendant relies upon *Stoker* v. *People,* 114 Ill. 320. Stoker was a constable and collected money under an execution upon a judgment, which he failed to turn over on demand. We held that money collected by a constable was not delivered to him within the meaning of section 74, and that his offense did not fall within the terms of that section but fell within the terms of section 79 of the Criminal Code, which is directed against

persons authorized by law to collect money due from one person to another. Section 81½ is directed against guardians, administrators, executors and conservators who fail to account and pay over when legally required to do so by the proper authority. Unlawful conversion is not an element of the crime defined by this section. Moreover it nowhere appears in this record that the probate judge ever ordered the defendant to turn over the funds in his hands. The proof shows he converted the fund to his own use and his withdrawals, by a series of checks, were evidence of the conversion and constituted a continuing offense. The facts make this case come within the terms of section 74. *People* v. *Kopman,* 358 Ill. 479.

At the close of the People's testimony, the court refused to require the prosecution to elect upon which count of the indictment it would proceed. It is urged that had the People elected to rely upon the first count, defendant would have been entitled to a peremptory instruction, because the mere deposit of the check to his personal account did not constitute embezzlement. Merely depositing the money in his account would not constitute the crime (*People* v. *Davis,* 269 Ill. 256,) but where a deposit is made with intention to convert and use it whenever it suits the purpose of the depositor, the crime is complete. The evidence of defendant's acts, and of his admission to Judge DeBoice that he had used the money but would replace it in a few days, was sufficient to show embezzlement of the check under the first count.

It is claimed that there was a fatal variance between the first count and the proof, in that the check, with its endorsements, was pleaded *in hæc verba,* and there was no proof that the legends showing payment were on the check until after the defendant parted with its possession. The proof shows the check was deposited in the bank whose "paid" legend appears thereon. Counsel concede it could not have been placed there while it was in defendant's pos-

session. He was therefore not misled by the indictment. A variance in a criminal case is not now regarded as material unless of such a substantial nature as to mislead the accused in making his defense or expose him to a second jeopardy for the same offense. (*People* v. *Boneau*, 327 Ill. 194; *People* v. *Fox*, 269 id. 300.) Manifestly the legend does not put him in danger of second jeopardy.

We have already said that the withdrawals were but incidents of the original conversion, and furnish convincing proof of guilty intent and purpose. Wrongful conversion is the essence of the crime of embezzlement. Cases in which an accused was charged with separate and unrelated felonies have no application to the situation here. Embezzlement may and often does consist of many acts done in a series of months or even years. *People* v. *Jasiecki*, 301 Ill. 23; *Ker* v. *People*, 110 id. 627.

It is claimed that it was error to submit the second and third counts to the jury because they began "The grand juror" instead of "The grand jurors." Each count concludes "And so the grand jurors upon their oaths say." Where the meaning of an indictment is plain, faulty grammar, wrong spelling, defective rhetoric or an error in punctuation, do not render it insufficient. (*People* v. *Kargula*, 285 Ill. 478.) Great niceties and strictness of pleading are countenanced and supported only where a defendant would be otherwise surprised on the trial, or unable to meet the charge or prepare his defense. *People* v. *Donaldson*, 341 Ill. 369; *People* v. *Cohen*, 303 id. 523.

The evidence is sufficient to establish, beyond any reasonable doubt, defendant's guilt of the crime charged. There is no prejudicial error in the record and the judgment of the circuit court is affirmed.

*Judgment affirmed.*