(No. 24114.—

The First-Trust Joint Stock Land Bank of Chicago, Appellant, *vs.* Horace A. Hickok *et al.* Appellees.

*Opinion filed October 15, 1937.*

HIBBS & POOL, for appellant.

BUTTERS & BUTTERS, and JOHN A. BERRY, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on leave to appeal granted to review the judgment of the Appellate Court reversing the decree of the circuit court of LaSalle county, which foreclosed a mortgage upon a certain tract of land in that county.

The facts are as follows: In 1921, appellee Horace A. Hickok, and his wife, borrowed from his mother, Martha Hickok, the sum of $6000 and gave their note, secured by a mortgage on 80 acres of land in LaSalle county, for the sum of $6000. This mortgage was made subject to another mortgage referred to in this record as the Hummer mortgage. A short time after the execution of the Hickok mortgage appellee Ethel Hickok, sister of Horace, purchased an interest in the said mortgage note to the extent of $1000. This mortgage was not paid and on February 29, 1928, a new note for $6000 was executed and a trust deed to secure the same was made to James W. Weldon, as trustee. This trust deed gave prepayment privileges at interest-paying dates in the sum of $500 or multiples thereof. This was a renewal of the previous mortgage and was made subordinate to the Hummer mortgage on which there remained unpaid the sum of $500.

During the summer of 1928 Horace negotiated, through Weldon as his agent, with the appellant in this case for a

loan of $8000, and on August 18, 1928, he and his wife executed a mortgage to the appellant covering the same 80 acres covered by the Hickok trust deed and an additional 40 acres adjacent thereto, which Horace Hickok was then contemplating buying. It appears that one of Horace Hickok's reasons for seeking the loan from appellant was to buy this land. Another appears to have been to pay off a sum of over $2100 which he owed the Troy Grove State Bank of which Weldon was an officer. The mortgage to the appellant was recorded on September 25, 1928, but the money was not paid over until March 2, 1929, at which time the additional 40 acres was paid for by Horace and the balance of the Hummer mortgage loan was paid, as was the indebtedness to the Troy Grove State Bank, all out of the receipts of this loan.

On March 4, 1929, Weldon, as trustee under the Hickok trust deed of February, 1928, executed a release of that trust deed and on the same day Horace Hickok and his wife executed a new note due March 1, 1934, secured by a trust deed to Weldon, as trustee, conveying the original 80 acres owned by Horace and the 40-acre tract newly purchased by him. This mortgage was recorded on March 4, 1929. On April 8, 1929, appellant caused its mortgage dated August 18, 1928, to be re-recorded and on May 23, 1929, Weldon, as trustee, signed an agreement reciting that it was the intention of the parties that the mortgage of the appellant dated August 18, 1928, be a first lien on the premises described therein and superior to the lien of the Hickok trust deed made to Weldon, as trustee, on March 4, 1929. This subordination agreement was not signed by Martha Hickok, the holder of the $6000 note, nor by Ethel Hickok, who had a one-sixth interest therein.

Martha Hickok died in 1932 and the subordination agreement was found among her private papers in a safety deposit box which stood in the name of Ethel Hickok. It appears that Horace Hickok at all times paid the interest

on the Hickok trust deed to Weldon, who was confidential adviser of Martha Hickok. He, in turn, paid her the interest by check, and also drew a check at the same time, for $60 to pay interest accruing to Ethel. This check was signed by Martha and in this manner the business was transacted. Ethel testified that her mother had possession of the papers and transacted all of the business in connection with them; that while the safety deposit box was in her (Ethel's) name and she alone had a key, she always went with her mother when the box was opened in the latter's presence. Ethel also testified she did not know of the existence of the subordination agreement or the execution of the note and trust deed of March 4, 1929, until after her mother's death. A default in the semi-annual interest payment due November 1, 1932, brought about the bill by appellant to foreclose the mortgage in this case as a first lien. On October 28, 1932, Horace Hickok was adjudged a bankrupt, and, thereafter, the trustee of his estate disclaimed any interest in the real estate.

Appellee Dean, administrator with the will annexed of the estate of Martha Hickok, and Ethel Hickok, answered the bill, denying that the appellant's trust deed constituted a first lien and alleged that the release deed executed by Weldon, as trustee, on March 4, 1929, and the subordination agreement, were fraudulently executed and without authority. They filed a cross-bill in which they sought to have the trust deed of February 29, 1928, declared in full force and effect and that it be declared to be a first lien on the 80-acre tract. A decree was entered holding the trust deed of February 29, 1928, was a first lien on the 80 acres, as it secured the indebtedness to Ethel Hickok, but that the appellant's mortgage was a first lien on said tract in so far as against the indebtedness to Dean as administrator of the estate of Martha Hickok. Both parties appealed to the Appellate Court which, in effect, held that the trust deed of February 29, 1928, should be restored and Ethel

Hickok and Dean, as the administrator of the estate of Martha Hickok, should be declared to have a prior lien on the 80 acres to the amount due on the $6000 mortgage, and that appellant have a second lien thereon. No complaint is made of the rulings concerning the lien on the 40 acres.

The question involved in this case is, which trust deed takes priority. Appellees argue that the release of the trust deed of February 29, 1928, is not, *prima facie,* a discharge of the security and does not give an opportunity for the intervention of another lien, for the reason that the indebtedness was not paid and the trust deed of March 4, 1929, was taken merely to renew the original mortgage. They rely upon cases holding that, where the new mortgage is shown by the surrounding circumstances to have been but an extension of an old mortgage and nothing more, the later mortgage retains the position of the first in the priority of liens. Of such cases are *Campbell* v. *Trotter,* 100 Ill. 281, *Shaver* v. *Williams,* 87 id. 469, and *Christie* v. *Hale,* 46 id. 117. Counsel for appellant argue, however, that those cases are not applicable here, because in this record the evidence shows an intention on the part of Martha Hickok, through the trustee, to postpone the priority of her trust deed to that of the appellant. They argue that it was evidently a family arrangement whereby Horace Hickok was enabled to borrow the money from appellant.

It is a general rule that a trustee is presumed to have acted in good faith and to have performed his duties under the trust. The burden of proving his breach of trust rests upon one asserting it. The 1928 trust deed contained a prepayment privilege. Where, under such a trust deed, payment of the principal is made at interest-bearing dates, or at the time it may become due, the rule is, that the trustee's release is *prima facie* valid and can be overcome only by showing fraud, accident or mistake, or that the party did not intend to release. This rule has been announced in *Kennell* v. *Herbert,* 342 Ill. 464; *Lennartz* v.

*Quilty,* 191 id. 174, and *Flower* v. *Elwood,* 66 id. 438. The inference of authority to receive payment arises from the possession of the trust deed and notes by the person to whom the payment is made, and does not exist without such possession. *Kennell* v. *Herbert, supra; Fortune* v. *Stockton,* 182 Ill. 454; *Stiger* v. *Bent,* 111 id. 328; *Cooley* v. *Willard,* 34 id. 68.

In this case the *prima facie* evidence of the validity of the release executed by Weldon March 4, 1929, is not disputed as to Martha Hickok. The subordination agreement and the March 4, 1929, note, were found in her possession. The note and trust deed of February 29, 1928, were not in her possession and could not be found. She lived for nearly three years thereafter and made no complaint. These facts, together with the fact that the 1928 note was not due when the new note was made, strongly indicate an understanding on the part of Martha that the 1929 note was to become a second lien. Not only is there no evidence in the record of a contrary intention, but the record bears strong evidence of an intention on her part to release the mortgage of February 29, 1928, and to accept a second lien in lieu thereof. Ethel Hickok testified, however, that she did not know anything about this release and that she did not see the subordination agreement and did not know of its existence until after her mother's death. She also testified, however, that her mother transacted all of the business pertaining to this loan to Horace, and kept possession of the note and other papers connected therewith. As we have seen, Martha personally collected all interest and gave her check to Ethel for the interest on $1000. Horace testified that when he made the new note and trust deed on March 4, 1929, he understood that the 1928 trust deed was going to be released. We are convinced that this record shows that Martha Hickok voluntarily gave up the 1928 note and trust deed and voluntarily took the 1929 note and trust deed as a second lien. She, therefore,

was, and her estate is, bound by the release and subordination agreement.

The inference of authority to release a mortgage and surrender the notes issued thereunder, as Martha in this case did, is analogous to the inference of authority in the one possessed of notes to receive payment, which, under the rule as announced in *Kennell* v. *Herbert, supra,* and other cases therein cited, arises out of the possession of the trust deed and the notes, by the person to whom the payment is made. Ethel Hickok, by entrusting her interest in the $6000 note to her mother, and permitting her to attend to all transactions concerning the note and trust deed, and receiving interest from her, is bound by her mother's transactions with the note and trust deed, including her release and acceptance of the subordination agreement. Under such circumstances Martha is to be considered the lawful owner of the note and trust deed, so far as the rights of third persons are concerned. The principle involved here is not unlike that announced in *Yates* v. *Valentine,* 71 Ill. 643.

It being apparent from all of the evidence in the record that Martha intended to release her position as first mortgagee and to take a second mortgage with the additional 40 acres as security, that intention is binding upon Ethel, who was content to leave the possession of the note and the transaction of all business relating thereto to her mother. We are of the opinion, therefore, it is a fair inference, taken from these circumstances, that it was the intention of the parties to permit the intervention of the appellant's trust deed and note as a prior lien, apparently to enable Horace to buy the additional 40 acres of land, and the *prima facie* validity of the trustee's release of the 1928 trust deed is not overcome.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*