(No. 31267.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LAWRENCE A. BARRETT, Plaintiff in Error.

*Opinion filed January 18, 1950.*

DAILY, J., dissenting.

GUNN, J., specially concurring.

HARRY A. BIOSSAT, of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, CLEMENT D. CODY, and RUDOLPH L. JANEGA, all of Chicago, of counsel,) for the People.

190

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Lawrence A. Barrett, plaintiff in error, prosecutes this writ to review a judgment of conviction of embezzlement entered by the criminal court of Cook County after trial before that court without a jury. He was sentenced to the Illinois State Penitentiary for a term of not less than five nor more than eight years. The indictment returned against him consisted of two counts, the first of which charged that he feloniously and fraudulently, without having the consent of unpaid owners and holders of certain liquidating trust certificates, embezzled and fraudulently converted to his own use a sum of money amounting to $10,398.31, which was the money and property of Teresa Romanelli, in the amount of $120.00; Helen McGovern, in the amount of $107.18; Bennett W. Ellis, $49.21; Eleanor Cowdin, $20.69; John Bintz, $6.78, and 2500 other unpaid holders and owners of certain liquidating trust certificates whose names are unknown to the grand jurors. The second count charged larceny of the same property but will need no consideration in this opinion since the trial court made no finding with respect to it.

The charges against defendant arose from his participation as successor trustee in a plan for the reorganization of The Madison-Kedzie Trust and Savings Bank which had suspended banking operations on March 4, 1933. Briefly, under the plan a new bank was created, while the assets of the old bank were to be liquidated and paid to the persons entitled to receive payment. One William L. O'Connell was named as liquidating trustee and, shortly after December 21, 1934, entered into a liquidating trust indenture with the bank, by which the assets to be liquidated were delivered to him. O'Connell died July 24, 1936, and, under the terms of the trust agreement, defendant succeeded him as liquidating trustee.

The trust agreement provided that the trustee be vested with equitable title to certain assets of the bank enumerated in the indenture for the purpose of liquidating, compromising, exchanging and settling them, and ultimately reducing the same to cash, at times and in manners solely within the absolute and uncontrolled discretion of the trustee. It was provided that all cash sums realized by the trustee should be distributed in the following order of priority: (1) To the payment of costs and expenses of the liquidating trustee; (2) *Pro rata* to the holders of Class A Liquidating Trust Certificates authorized under the provisions of the trust agreement; (3) *Pro rata* to holders of class B certificates; and (4) *Pro rata* to holders of class C certificates. The latter two classes of certificate holders were to receive nothing until class A holders had been paid in full. The total face value of outstanding class A certificates was $826,613. It was agreed that the trust certificates were not to constitute an indebtedness of the bank or of the liquidating trustee, but only evidence of the right of the certificate holders to receive payments from the trustee when and if payments were made by him. The trustee was to keep a record of certificates issued, dates, names and addresses of persons to whom issued, the amounts, and records of transfers, cancellations and payments.

Plaintiff in error set about to liquidate the assets he had received as successor trustee, and as he did so placed the money realized in what was known as the trustee's general account in the Merchants National Bank of Chicago. On December 26, 1942, he withdrew $82,658.03 from his general account and with it opened what was called the trustee's dividend account in the same bank. He then declared a 10 per cent dividend for class A certificate holders, sending them notice of the same. June 5, 1944, a second 10 per cent dividend was declared and notice given; however, defendant deposited only $70,000 in the dividend account.

A dividend of 15 per cent was declared on January 15, 1946, but only $60,000 was deposited in the dividend account. The three dividends were not put into separate accounts or segregated in any manner but all went into the one dividend account at the Merchants National Bank. The total cash requirement for the three dividends declared aggregated $289,291.44, yet up to and including March 6, 1946, defendant's deposits were only $212,644.96 or $76,646.48 short of the amount required. On March 6, 1946, the dividend account became depleted when an overdraft of $48.63 occurred. On this date there was still a sum of $10,398.31 of the first dividend yet unpaid to 2786 class A certificate holders, including those named in the indictment. It is this sum which defendant is accused of embezzling.

Subsequent to March 8, 1946, and concluding September 29, 1946, the defendant transferred a total of $16,250 from his general account to the dividend account by eleven separate transfer items, some of which were to meet overdrafts; $4600 was deposited from an unexplained source; and $227.74 was transferred by bank authorities after closing out the account because of an overdraft under date of September 30, 1946. The dividend account on that date was short $51,439.74 of the amount necessary to completely pay out the three dividends declared. On January 3, 1947, a receiver of the assets, property and effects of the liquidating trust was appointed by the circuit court of Cook County. At that time there remained only $4.75 in defendant's general account.

The notice of the first 10 per cent dividend which was sent to each of the class A certificate holders was substantially as follows: "A ten per cent (10%) liquidating dividend has been declared on the outstanding Class 'A' Liquidating Trust Certificates as of December 28th, 1942. Kindly bring your certificate (which is required for endorsement of payment). Call at office No. 2," etc. The

checks made up for the first dividend were blue and white in color and had printed on the margin "Liquidating Dividend No. 1, ten per cent Class A liquidation trust certificate." The checks for the second and third dividends were different colors.

The indictment, which was returned April 21, 1948, charged that plaintiff in error feloniously and fraudulently, without having the consent of the unpaid class A certificate owners, embezzled and fraudulently converted to his own use the sum of $10,398.31 belonging to Teresa Rommelli, Helen McGovern, Bennett W. Ellis, Eleanor Cowdin, John Bintz and 2500 other unpaid holders and owners of class A liquidating certificates. Briefly, the theory of the prosecution is that plaintiff in error wilfully converted the sum to his own use by using it to discharge his obligations to the second and third dividend holders. Plaintiff in error pleaded not guilty, following which a hearing was held before the court. At the conclusion of the evidence defendant presented a written motion for a judgment of not guilty because of alleged duplicity of counts 1 and 2 of the indictment and because of the intervention of the three-year Statute of Limitations. This motion, along with those in arrest of judgment and for a new trial, were overruled by the trial court, which thereupon found him guilty of embezzlement as to count 1, made no finding with respect to count 2, the larceny count, and sentenced him to the penitentiary.

In the errors assigned in this court plaintiff in error reiterates his contentions that count 1 is duplicitous and that the indictment was barred by the three-year Statute of Limitations. In addition he urges that the evidence fails to prove the crime of embezzlement, stating that the evidence does not show a criminal intent, or a conversion to his own use. Finally, it is contended that there was a variance between the allegations of the indictment and the proofs as to ownership of the several beneficiaries of the trust.

With respect to the assertion that count 1 is duplicitous, defendant argues that where one is charged with a number of embezzlements from separate individuals, in separate amounts, such charges cannot be joined in one count of an indictment. Although it is the general rule that it is improper to lay the ownership of property involved in an offense in several different persons in a single count of an indictment, an indictment charging in one count an offense involving the property of several different owners is not rendered duplicitous by reason of the allegation of plurality of owners where it charges the commission of one offense committed at one time and place, constituting one transaction. (27 Am. Jur. p. 685.) Duplicity in an indictment arises from charging more than one offense, not from charging a single offense committed in more than one way, or pleading different acts contributing to the ultimate charged offense. (*United States* v. *B. Goedde & Co.* 4 Fed. Supp. 523.) Where two offenses arise out of a single transaction, a single indictment may contain counts as to each offense, or the offenses may be joined in the same count. (*People* v. *Arnold,* 396 Ill. 440.) From the foregoing it may be seen that whether the allegations of the indictment here charge separate embezzlements, or merely a pleading of separate acts which ultimately constitute a charge of one offense, they were properly joined in one count since they arose from one transaction, in the same manner, time and place. As pointed out in *People* v. *Schnepp,* 362 Ill. 495, embezzlement may, and often does, consist of many acts done in a series of months or even years. The charge of duplicity is not well founded.

Defendant's next allegation of error is that the proofs show that the indictment is barred by the three-year Statute of Limitations. The accepted principle involved is that the statute begins to run against any embezzlement or fraudulent conversion when it was committed, and not when it is discovered, or made manifest by a failure to

pay over on demand. (*Weimer* v. *People,* 186 Ill. 503; *Baschleben* v. *People,* 188 Ill. 261.) The indictment here, which was returned April 21, 1948, recites, based on terms of the trust agreement, that title to the funds for dividend No. 1 passed to the class A certificate holders on December 28, 1942, when it was deposited in the bank, and that the embezzlement of $10,398.31 of such funds was completed on March 6, 1946. The theory of the prosecution is that the embezzlement began on February 27, 1946, on which date there was still $12,325.72 on deposit in the dividend account, which amount included the $10,398.31 belonging to the persons named in the indictment; that on February 27, 1946, by reason of payments to persons other than dividend No. 1 owners, the amount was reduced to $9,027.03; that defendant by reason of successive withdrawals by check paid out all of the $10,398.31 by March 6, 1946, on which date the continuing conversion became complete by reason of his overdrawing the account in the sum of $48.63. The defendant contends that if any embezzlement or conversion took place it happened between June 3, 1944, and June 12, 1944, the first date being the day the second dividend was declared and a deposit of $12,658.03 short of the amount necessary to pay it placed in the dividend account, and the second date being the day by which $23,249.00 had been paid out of the unsegregated account. Relying on the banking custom of "first money in, first money out," he urges that the use of dividend No. 1 funds to pay dividend No. 2 owners must have taken place more than three years prior to the return of the indictment herein.

We are constrained to agree with the trial court that the presumption of first money in, first money out, which is applicable to a bank and its depositors where the relationship is one of debtor and creditor, is not applicable to the case at bar for the reason that the character of the deposits is different from current bank deposits. The

trust indenture here provides that the deposit in the bank was deemed payment of the dividend to the certificate holders. It was the absolute duty of the defendant to use the funds deposited for the first dividend for the payment thereof and for no other purpose, and if such funds were not distributed within five years to pay them over to the Auditor of Public Accounts to be held for the persons entitled thereto. It is a conclusive presumption in equity that a trustee dissipates or spends his own funds first, before touching or encroaching upon the trust funds. (*People ex rel. Nelson* v. *Peoples Bank and Trust Co.* 353 Ill. 479.) Further, it is a general rule that a trustee is presumed to have acted in good faith and to have performed his duties under the trust. (*First-Trust Joint Stock Land Bank* v. *Hickok,* 367 Ill. 144.) Thus, it may be presumed here that defendant complied with the trust indenture which gave and limited his powers, and by its terms he would have retained the unpaid portion of the first dividend until the last, *i.e.,* just prior to and at the time the dividend account became depleted on March 6, 1946. Knowing that he could only use his first deposit for the payment of the first dividend to class A certificate holders, plaintiff in error deposited funds which could be paid only to second and third dividend owners into the same account without segregation. He paid owners of each class promiscuously from the funds so deposited, with no attempt to allocate withdrawals to the portion of the fund from which they should have been withdrawn. As stated by the trial court, "He should not now be permitted a different course of action than he, himself, established." The presumption of first money in, first money out, is not a defense on which defendant may rely. We have observed, as pointed out, other contentions on this question and find that the indictment was not barred by the Statute of Limitations.

The serious question presented is as to whether or not felonious intent was proved. Plaintiff in error has listed

many points of evidence which he urges are indicative of his lack of felonious intent. They are: (1) That he at no time withdrew any of the dividend funds to his own use; (2) that no checks except dividend checks were paid out of the dividend account; (3) that he did not conceal the drawing of second and third dividend checks against the dividend account; (4) that all dividend checks for dividend No. 1 were drawn, signed and available to all class A certificate holders; (5) that notices were sent to all class A holders; (6) that every person who called at his office received a check; (7) that he offered in court to pay in full those class A certificate holders who did not receive their first dividend; (8) that there was no concealment or secrecy as to any matter on his part; and, (9) that he was prevented from making further payments by the appointment of a receiver.

Plaintiff in error urges that at no time did he withdraw any of the dividend funds for his own use. The People contend that when plaintiff in error made his payments on the second and third dividends he converted the funds to his own use as completely as if he had drawn a check to pay some personal or private obligation; and while it is true that the conversion need not be for his own use but may be for another, certainly it is a fact to be considered along with all other facts in determining the question of felonious intent. We held, in the case of *People* v. *Ervin,* 342 Ill. 421, "Mere proof of the receipt of funds and failure to account therefor is not sufficient, in itself, to show embezzlement. There must be other evidence of the conversion. (*People* v. *Davis,* 269 Ill. 256.) One of the elements necessary to be proved to constitute the crime of embezzlement is a criminal intent." Great latitude is allowed in proving intent where intent is an essential element of the crime charged, but a defendant charged with embezzlement should be permitted to show in his defense such facts and circumstances as tend to rebut the presumption that he in-

tended to commit the crime. *People* v. *Heilemann,* 362 Ill. 322; *People* v. *Ervin,* 342 Ill. 421; *Spalding* v. *People,* 172 Ill. 40.

Plaintiff in error also urges as another one of the reasons showing no felonious intent, that he offered in court to pay in full those Class A certificate holders who did not receive their first dividends. It is true, as urged by the People, that the offer to make a tender payment in the amount of $10,398.31, (which was made after the closing of all of the evidence,) was an offer to make restitution and was no defense to the crime charged in the indictment. It is elementary that an offer of restitution in a crime of embezzlement or larceny is not a defense to the crime, however, we believe that here it is another fact to be taken into consideration, along with all of the other facts, in trying to determine the absence or presence of the felonious intent charged to plaintiff in error.

Another ground urged by plaintiff in error that is indicative of his lack of felonious intent is that there was no concealment or secrecy on his part concerning the transactions. There is no evidence that there was any concealment or secrecy as to any matter by plaintiff in error, or that he in any way profited because of the misappropriation of funds. An analysis of the evidence does not reveal any attempt by the defendant to conceal or hide the omission made, nor does there appear any act or subterfuge committed by him in connection with his omission to pay the dividend to all of the Class A certificate holders. In the case of *People* v. *Parker,* 355 Ill. 258, this court said: "Embezzlement involves secrecy and the concealment by the defendant of his conversion. The absence of such proof is a circumstance which tends to negative the charge that the defendant was actuated by a felonious intent." No doubt if the cause had been tried before a jury an instruction would have been given on this question which would afford an opportunity for its consideration.

The fact, as disclosed by the evidence, that there was no concealment or secrecy on the part of plaintiff in error, no act of subterfuge, that it had not been shown that he received any personal or private gain from the misappropriation, that he offered to make complete restitution are all material facts to be taken into consideration in determining whether or not the necessary criminal intent is present which is an essential element in the crime of embezzlement. (*People* v. *Ervin,* 342 Ill. 421.) On another trial additional evidence might be offered on this question for the purpose of consideration in determining criminal intent.

We think the language in *People* v. *Parker,* 355 Ill. 258, is applicable here, where the court said, "The acts of the defendant may be acts of maladministration and indifference to the interests of his principal and subject him to severe censure, or he may be guilty of a breach of trust, but unless the evidence proves that he feloniously converted the property to his own use or took and secreted the same with intent so to do, without the consent of his principal, a conviction for embezzlement cannot be sustained." Likewise, here it can be said that the plaintiff in error may be guilty of maladministration and indifference to the interests of the holders of the Class A certificates, and guilty of a breach of the terms of the trust agreement, but unless the evidence proves him guilty beyond a reasonable doubt a conviction for embezzlement cannot be sustained. There was no direct evidence shown of any intent to embezzle other than the failure to pay in strict compliance with the trust agreement, and this act alone is not sufficient, under the circumstances and evidence as here disclosed, to prove beyond a reasonable doubt plaintiff in error's guilt of felonious intent to commit embezzlement.

Analyzing this evidence as shown by the record, we do not feel justified in sustaining the judgment. Upon another trial other facts and circumstances may possibly

be shown which may tend to dissipate the doubts which necessarily must arise upon reading the evidence as now presented.

The judgment of the criminal court of Cook County is reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*

Mr. JUSTICE DAILY, dissenting:

I am unable to agree with the result reached by the majority opinion and feel that the judgment of conviction should be affirmed on the record now before us. To put it simply, the opinion finds an absence of felonious intent by looking at what the defendant did not do, and fails to consider what he actually did do.

By the terms of the trust agreement the defendant was bound and charged with the knowledge that funds deposited for the first dividend could be used for the payment of the first dividend and for no other purpose. When he declared the second and third dividends it must be presumed that he had sufficient of the assets liquidated to pay them, and his notices to certificate holders were tantamount to an admission that he had deposited such funds for the certificate holders, which, under the trust agreement, then became their property. It is inconceivable that a shortage of over $76,000 could be a mere error in accounts or the result of some other clerical error of which the defendant was not aware. That the dividend account was short this amount was a secret well kept by defendant from the certificate holders who were the beneficiaries of the trust, as were the numerous overdrafts defendant paid from unknown sources, and forestalled knowledge of the true condition of his trust. His action of commingling the dividend funds kept knowledge from the first dividend owners that their funds were being used to pay second and third dividend owners. While the majority opinion states there was

no concealment or secrecy, the complex system of handling and banking the trust assets could well conceal many secrets from the certificate holders whose money was embezzled, and who would have little opportunity, if any at all, to scrutinize or control defendant's administration of the trust. Because of the nature of the relationship I feel that but little, if any, weight should be given such a defense.

There is sufficient precedent to say that by supplying the deficit in the second and third dividend funds from funds belonging to first dividend owners, defendant effected a wrongful conversion to his own use, and not to the use of the certificate holders, as he contends. The situation here is analogous to the one under consideration in *Spalding* v. *People,* 172 Ill. 40. In that case Spalding, as treasurer of the University of Illinois, had control of three funds: (1) the general university fund for current expenses; (2) an uninvested endowment fund; and (3) an invested endowment fund. He took bonds with a par value of $28,000 from the invested endowment fund and pledged them with a Chicago bank to secure his personal note for $25,000, which amount he deposited in the Globe Savings Bank, of which he was president. At the time of his trial the note was unpaid, the Chicago Bank had the bonds and refused to deliver them to Spalding's successor. Spalding was indicted for embezzling the bonds. It was admitted that he had knowingly and intentionally pledged the bonds to secure payment of the $25,000 which he borrowed as an individual, but he sought to defend that there was no criminal intent or no fraudulent conversion of the bonds, because as treasurer of the university he had paid out the $25,000 so borrowed, for the expenses of the university on its warrants regularly drawn upon him for that purpose. Without detailing the relationship, it is sufficient to say that Spalding claimed to be a creditor of the university for the amount in the general fund, that he might lawfully use it for his

own purpose, and that, there then being a deficit in the general fund, the supplying of the funds to pay the deficit by pledging the bonds from the endowment fund was not a conversion to his own use but to the use of the university. His proofs in this respect were not allowed in evidence, and the court, commenting on such defense, stated, at page 58: "The warrants were drawn on him for expenses, and plaintiff in error was charged with the knowledge that they were not drawn upon or payable out of the invested endowment fund; that that fund could not lawfully be applied to their payment, * * *. If a deficit had been created in the expense fund by his use of it under the supposition that by the alleged agreement to pay interest he could use it for himself, by supplying this deficit he did nothing more than he was bound to do, and the application of the $25,000 thereto was the application to his own use, and not to the use of the university." Also similar to the present case is that of *People* v. *Donohue,* 369 Ill. 558, wherein Donohue's use of a check received in the normal course of business to cover up a prior shortage in his accounts, was held to be a conversion to his own use and constituted the crime of embezzlement.

The evidence thus having shown that the defendant converted first dividend funds to his own use, a guilty intent is necessarily inferred from the voluntary commission of such an act, the inevitable effect of which was to deprive the true owners of their property. (*People* v. *Nevin,* 343 Ill. 597; *Spalding* v. *People,* 172 Ill. 40; *Commonwealth* v. *Tenney,* 97 Mass. 50.) I see nothing in the grounds relied upon by the majority opinion to defeat such an inference of felonious intent, and no similarity in the facts of this case to those of *People* v. *Parker,* 355 Ill. 258, and *People* v. *Ervin,* 342 Ill. 421, upon which the opinion is largely based.

It would unduly prolong this dissent to further elaborate my views on the inadequacies of factual data which the

majority opinion finds helpful to its result. For the basic reason that the felonious intent may be inferred from defendant's act, I believe the judgment of conviction should be affirmed.

Mr. JUSTICE GUNN specially concurring:

I concur in the result in this case, but do not think the opinion goes far enough. I do not believe that the defendant can be convicted of embezzlement under the facts as they appear in the record. Clearly, the Statute of Limitations has run. The majority opinion and the dissent seem to be under the impression that by an equitable fiction the time when the alleged conversion took place has been brought within the three-year Statute of Limitations. The equitable fiction of the last money in being the first money out has no application to criminal cases, and certainly not so as to extend the three-year limitation to more than six years.

The *Spalding case,* referred to in the dissent, while it contains language from which it might be inferred the equitable trust could be implied in an embezzlement case, yet it is clear that in that case there was an actual extraction and taking of funds and an attempt made to cover it up by taking a note. What was decided there was concerning the actual taking,—an embezzlement. In this case there has been no taking. Barrett has not profited a cent. And to make a man constructively guilty of a crime upon a theory that has been only heretofore applied in equitable cases is not in consonance with our administration of the criminal law.

I think the defendant should be discharged.